Hoffman, Appellant, *v.* Balka.

Argued March 17, 1954. Before Rhodes, P. J., Hirt, Ross, Gunther, Wright, Woodside and Ervin, JJ.

*Harry M. Sablosky,* for appellants.

*Anthony L. Differ,* with him *Fox, Differ & Honeyman,* for appellee.

OPINION BY ERVIN, J., April 15, 1954:

This is an appeal from the entry of judgment on the pleadings. Appellants instituted an action in assumpsit for the recovery of $9,500.00, the balance of the purchase price of real estate under an agreement of sale. Appellee filed an answer and counterclaim for the recovery of $1,000.00, the down money paid at the time of the execution of the agreement of sale. There being no facts in dispute, both parties filed motions for judgment on the pleadings. Appellants' motion was denied, appellee's motion for judgment on the counterclaim was allowed and judgment entered thereon.

Appellants are the owners of part of lot No. 27 in a subdivision comprising 73 lots known as Glenmore Farms, located in Glenside, Abington Township, Pennsylvania. These lots were made subject to building restrictions and limitations by deed. The relevant restrictions are:

"A. All lots in the tract shall be known and described as residential lots except those lots which are especially excepted in Paragraph 'B' below . . . .

"B. Lot No. 27 is restricted to commercial use for retail merchandizing and no business shall be conducted thereon until it has been approved in writing by the committee referred to in paragraph (i) hereof. However, if such committee is not in existence or fails to approve or disapprove the proposed type of business within thirty days then such approval will not be required provided the business is not of an illegal nature nor in violation of paragraph (e) hereof.

"E. No noxious or offensive trade shall be carried on upon any lot nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.

"I. No building shall be erected on any lot until the design and location thereof have been approved in writing by a Committee appointed by the subdivider or elected by a majority of the owners of lots in said subdivision. However, in the event that such committee is not in existence or fails to approve or disapprove such design or location within thirty days then such approval will not be required provided the design and location on the lot conform to and are in harmony with existing structures in the tract . . .

"K. These covenants and restrictions are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1969, at which time said covenants and restrictions shall terminate."

Lot No. 27 is 142 feet in depth and contains approximately 366 feet in frontage on Easton Road between Fairfield Street and Castlewood Road. Appellants own that part of the lot which forms the northwest corner of Fairfield Street and Easton Road having a frontage of 266 feet on Easton Road. On the remainder of lot

No. 27, forming the southwest corner of Castlewood Road and Easton Road, with a frontage of 100 feet on Easton Road, there is a gasoline service station. The land which appellants agreed to sell to appellee, who also desires to use it for the purpose of a gasoline service station, consists of that part of lot No. 27 which comprises the northwest corner of Fairfield Street and Easton Road, containing a frontage of 125 feet on Easton Road and being 142 feet in depth. The agreement of sale contained the following clause: "Sellers warrant that the within described ground is zoned commercial and that there are no enforceable deed restrictions prohibiting the use of the property for gasoline service station purposes."

Appellants sought to obtain approval by the Executive Committee of the Glenmore Farms Civic Association of the proposed use of the land by appellee but the Committee refused to give its approval, stating that another gasoline station, in close proximity to the one already existing, would be objectionable. Shortly thereafter appellee repudiated the agreement of sale and demanded the return of the down money.

Appellants contend the restrictions conferring power on a committee to determine the commercial use to which the lot may be applied, without any standard to guide or limit its determination, are so unreasonable in scope as to be against public policy and therefore unenforceable. It is well settled that building restrictions are not favored by the law, they must be strictly construed, they cannot be enlarged or extended by implication and all doubts should be resolved against the restrictions and in favor of the free and unrestricted use of the property. *Baederwood v. Moyer*, 370 Pa. 35, 87 A. 2d 246; *Henry v. Eves*, 306 Pa. 250, 159 A. 857. However, it also appears to be generally considered that a power reserved by the common grantor of lots in a subdivision to consent or not consent to particular

348

buildings on particular lots is reasonable and valid.
See 19 A.L.R. 2d 1274, 1294. It is also stated in 19
A.L.R. 2d 1274, 1287, 1288: "As a general rule, where
restrictions concerning the placing or use of buildings
on lots in a plotted tract provide for the consent of
other lot owners to a departure from the restrictions,
or require their consent to plans or other details of
buildings, one lot owner may enforce the restrictions
as against another." In *Harmon v. Burow,* 263 Pa.
188, 106 A. 310, the question was raised whether the
following clause in the deeds of a subdivision was valid:
" 'No structure of any kind shall be erected or permitted
upon said premises or any part thereof, unless the plans
for the same shall have been first submitted to and
approved by [the common grantor] or his legal repre-
sentatives.' " The bill was brought by the named grantor
and others to restrain the erection by the defendant of
a dwelling house on his lot, the plans for which had
been disapproved by the named grantor's agent. The
court sustained a legal conclusion that the contract
was a lawful one and inured to the benefit of other lot
owners in the plan, including the plaintiff. See 19
A.L.R. 2d 1295.

The contention of appellants that the lack of stand-
ards to guide the Committee invalidates the restric-
tions is without merit. As President Judge KNIGHT
stated: "We cannot agree with counsel that there are
no standards set up to guide the committee in the re-
striction before us. In the first place, the use must
be a commercial use. In the second place, the com-
mercial use must be for retail merchandizing. In the
third place, the commercial use must not involve a
noxious or offensive trade and in the fourth place, the
commercial use must not be one which is or may be-
come an annoyance or nuisance to the neighborhood.
It is difficult to see how any more definite standards
could be set up. The number of different kinds of

business engaged in retail merchandizing is legion and it would be impractical if not impossible to name them all. We are therefore of the opinion that the restriction does contain adequate standards to guide the committee in its determination."

Equally without merit is the contention that the landowners of the subdivision or their committee have lost the right to prohibit or enjoin the owner of the lot involved here from conducting a gasoline station thereon because they permitted or acquiesced in the operation of a gasoline service station on the other part of the restricted lot. "Where the power to consent or not to particular buildings on granted lots is reserved to the grantor and his successors in title, and runs with the land, the power is not waived or abandoned as to one lot by consenting to buildings on another, *even where the lots are adjacent* and the reservation of power as to both lots appears to be for the same benefit to the grantor's remaining land." (Emphasis supplied) 19 A.L.R. 2d 1296; see *Harmon v. Burow,* supra.

Because the Committee agreed or acquiesced in the existence of one gas station on lot No. 27 does not mean they have no power to object to another on the same lot. Considering the fact there are 73 lots in this subdivision, only one of which is set aside for commercial purposes, it would be reasonable to expect the Committee to strenuously oppose the proposed use and withhold its approval when the gasoline station now in existence occupies about one-third of the total frontage of this lot on Easton Road, and if the proposed use were approved, approximately two-thirds of the frontage available in the subdivision for commercial purposes would be used for gasoline service stations. Nor is it unreasonable to suppose the subdivider was desirous of more variety in the type of business use permitted on Easton Road and intended the lot

to be developed to include such retail businesses as drug store, grocery and hardware store, which would be of more value to the community than another gasoline station.

Under the circumstances in this case, where one lot in a subdivision of 73 lots has been set aside for commercial purposes and the power is given to a committee of the lot owners to approve or disapprove the type of business to be conducted thereon, the refusal of the committee to approve a contemplated use of part of the lot for a gasoline station does not constitute such an unreasonable, arbitrary or capricious exercise of the power as to render the restriction unenforceable where there is one gasoline station already in operation on a part of the lot comprising about one-third of the total area set aside for retail merchandizing and where the approval of the contemplated use would result in about two-thirds of the area being used for gasoline service stations, thus restricting its availability for other more desirable businesses.

Judgment affirmed.