**ALUMINUM COMPANY OF AMERICA,**
**Appellant,**

v.

**Albert W. KOHUTEK, Appellee.**

**No. 524.**

Court of Civil Appeals of Texas,
Corpus Christi.

March 26, 1970.

Rehearing Denied June 25, 1970.

Vinson, Elkins, Searls & Connally, John B. Holstead, III, Houston, for appellant.

Cullen, Edwards, Williams & Stevenson, Donald A. Edwards, Victoria, for appellee.

OPINION

SHARPE, Justice.

This suit was brought by appellant, a corporation, sometimes hereafter "Alcoa"

to permanently enjoin appellee Kohutek from parking, maintaining, improving, residing in, using or occupying a trailer house (or mobile home) on a 2.5 acre tract of land in Port Lavaca, Texas, on the ground that a trailer house on the property violated a restrictive covenant in favor of appellant which was included in appellee's deed. After jury trial, the lower court rendered judgment based on the verdict that appellant take nothing by its suit.

Calhoun Development Company, a wholly owned subsidiary of appellant, originally organized, restricted and platted the Lynnhaven subdivision in Port Lavaca, Texas. Subsequently, Calhoun Development Company was dissolved and Alcoa acquired title to all unsold tracts in Lynnhaven. The land within the boundaries of the subdivision was divided into some 250 residential lots and several acreage tracts. On June 1, 1949, Calhoun Development filed of record a plat of Lynnhaven subdivision. As a part of the plan or scheme for the development of Lynnhaven as a first class residential area for management employees of Alcoa a detailed set of restrictions on the use of the residential lots was filed of record along with the plat of the subdivision. Paragraph 8 of such restrictions provides in part:

"No trailer * * * shall at any time be used as a residence, temporarily or permanently, nor shall any structure of a temporary character be used as a residence."

The acreage lots in the subdivision were not subject to that specific restriction but, as is material to this case, to a different deed restriction now to be discussed. On May 3, 1962, Alcoa conveyed a 2.5 acre tract in Lynnhaven to J. W. Linville, Jr. subject to a deed restriction reading as follows:

"It is a condition of this conveyance that until ten (10) years have elapsed from the date hereof, no building or other improvement shall be placed, constructed, or built upon the land hereby conveyed unless plans and specifications for the same have been submitted to Grantor and Grantor has given its written approval of the same; by acceptance of this deed Grantee agrees for himself, his heirs and assigns that the condition just stated shall be a covenant running with the land, which shall be faithfully observed by Grantee, his heirs and assigns."

All acreage tracts located in Lynnhaven which have been sold by Alcoa were subject to a similar deed restriction.

On March 3, 1969, Kohutek acquired title to the said 2.5 acre tract by deed from Linville which adopted the Alcoa restriction last above set out. Prior to securing that deed and without obtaining Alcoa's written approval, Kohutek parked a trailer house on the property and with his family began to reside therein. On April 14, 1969, Alcoa filed suit against Kohutek to enforce the deed restriction and to enjoin Kohutek from parking, maintaining, improving, residing in or otherwise using or occupying as a residence the trailer house located on the 2.5 acre tract in Lynnhaven. Kohutek answered and pleaded that an Alcoa employee, G. A. Rhoades, verbally consented to placing of the trailer house upon the land; and, therefore, Alcoa was estopped from securing the injunction it seeks; and that Alcoa had waived its claim to enforce the covenant or restriction. Kohutek further pleaded that enforcement of the deed restriction would be " * * * discriminatory and unlawful."

In response to seven special issues the jury found in substance as follows: (1) The action of Kohutek in locating his trailer house on the land in question without securing Alcoa's written consent constitutes a distinct and substantial breach of the restrictive covenant in question. (2) Alcoa acted arbitrarily or capriciously in refusing to consent in writing to Kohutek maintaining a trailer house as a residence on the land in question. (3) On February 19, 1969, Rhoades falsely represented to Kohutek that Alcoa consented to Kohutek plac-

ing a trailer house on the land in question. (4) At the time Rhoades represented to Kohutek that Alcoa consented to Kohutek placing a trailer house on the land in question Rhoades knew that Alcoa had not so consented. (5) Kohutek did not have knowledge or the means of determining that Alcoa would not consent to his placing a trailer house on the land in question. (6) Rhoades represented to Kohutek that Alcoa consented to the placing of a trailer house on the land in question with the intention that such representation should be acted upon by Kohutek. (7) Kohutek purchased the trailer house and placed same on the land in question in reliance upon the representation of Rhoades that Alcoa consented to his placing a trailer house on the land in question.

Appellant asserts fourteen points of error. Point one asserts that the trial court erred in rendering a take-nothing judgment against Alcoa because the evidence conclusively established that appellee breached the restriction in his deed and that Alcoa did not act arbitrarily or capriciously in refusing to consent in writing to appellee placing a trailer house on the land in question. Appellant's point four asserts additionally that Alcoa is not estopped from asserting the deed restriction. Appellant's remaining twelve points assert that the evidence is legally and factually insufficient to support the jury answers to special issues 2, 3, 4, 5, 6 and 7. Appellant agrees with the jury finding on special issue No. 1.

Appellee's brief not only replies to appellant's fourteen points of error but also contains "appellee's point in support of judgment," which we will first consider. Here appellee contends that the judgment should be affirmed irrespective of the jury verdict because as a matter of law a trailer house is not a building or improvement within the terms of the restrictive covenant in appellee's deed. We disagree with appellee's stated contention and hold that the trailer house here involved is at least a building within the meaning of the restrictive covenant.

It may be said that generally the word "building" includes an erection or structure intended for use and occupation as a habitation or for some purpose of trade, manufacture, ornament, or use. See Mutual Lumber Co. v. Sheppard, 173 S.W.2d 494 (Tex.Civ.App., Austin, 1943, n. w. h.), in which the Court said:

"* * * It is generally held, however, that the meaning of the noun 'building' depends usually upon the particular facts and circumstances of each case, controlled largely by the intention of the parties, or by the aim or purpose of a particular statute. The noun 'building' has been generally held to include any edifice erected by the hand of a man of lumber, iron, stone, brick, wood, marble, cement, or any other substance, connected together, and designed for any use in the position fixed; or to include an edifice, an erection, a fabric built or constructed; a structure designed for the habitation of men or animals, or for the shelter and protection of property. Whenever the noun 'building' is used in this sense it has been held to include all sorts of structures, fabrics built or constructed, edifices or erections used or useful to man. * * *"

At the time the present dispute arose the trailer house was more or less permanently located on the 2.5 acre tract purchased by Kohutek. The trailer house had been deprived of all means of locomotion, not only by detachment from the truck that delivered it but also by reason of the fact that it had been lifted off its wheels and placed on blocks. It has a roof, side walls, floor, cross walls and furnishings. It is connected to public utilities. It has beds, bath, toilet and cooking facilities. It is used as a place in which eight people live, eat and sleep. Under the facts, the trailer house falls within the scope of the definition of "building" whether such word be given a broad or restricted meaning. See 12 C.J.S. Building p. 380.

In Corning v. Town of Ontario (1953), 204 Misc. 38, 121 N.Y.S.2d 288, Corning sought to restrain the defendants from attempting to enforce the provisions of a town zoning ordinance which provided that one story residential buildings in "A" districts should contain at least 900 square feet. Corning and family lived in a trailer house containing less than 900 square feet. The trial court granted Corning the injunction sought, but the judgment was vacated on appeal. The Court held in part as follows:

"The papers before the court do not indicate whether the trailer rests upon wheels, jacks, blocks, or some type of permanent foundation. The plaintiffs do however allege that sanitary facilities have been installed including a septic tank and well and that electricity has also been installed. It is apparent, therefore, that the trailer has been affixed to the land by such sanitary and electrical connections. The plaintiffs further say that they sold their house and bought the trailer and the lot upon which it stands for the purpose of their residence and that they now have no other place in which to live. It is therefore apparent that the plaintiffs intend to occupy this trailer and the lot on which it is located as a permanent residence.

"Plaintiffs claim that the trailer is not a building because it is something mobile. Mobile it was when used upon the highway, but mobility ceased when it was removed from the highway, attached to the soil and occupied as living quarters. A metamorphosis has occurred; the mobile vehicle has become a fixed residence."

*    *    *    *    *    *

"The meaning of the word 'building' as used in the Zoning Ordinance must also be considered in the light of the purpose for which such ordinance was enacted. Caddy v. Interborough Rapid Transit Co., 195 N.Y. 415, at page 420, 88 N.E. 747, 749, 30 L.R.A.,N.S., 30. The Town Law empowers a Town Board to enact zoning ordinances to regulate and restrict the height, number of stories and size of buildings and other structures for the purpose of promoting the health, safety, morals, or the general welfare of the community. Town Law, § 261. For such purposes the town may be divided into districts in which the ordinance may regulate and restrict the erection, construction, reconstruction, alteration or use of building, structures or land. Town Law, § 262. Pursuant to the power so granted, the Zoning Ordinance in question was adopted. The purpose of the statute and of the ordinance itself was not to aid the individual owner but to promote the development of property in the town for the general welfare of the entire community. Rodgers v. Village of Tarrytown, 302 N.Y. 115, at page 124, 96 N.E.2d 731, 734.

"In furtherance of such general purpose the ordinance provided that one story residential buildings in 'A' districts should contain at least 900 square feet. It is plaintiffs' position that such requirement applies to residences erected upon the premises but not to trailers because they are constructed elsewhere and then moved on their own wheels upon the premises. If this contention is to prevail, our finest residential districts could be interspersed with house trailers used as permanent residences without regard to height or size. The Court is of the opinion that the word 'building' as used in Section 6 of the ordinance applies to the house trailer in question for to hold otherwise would be to thwart the very purpose for which the ordinance was enacted."

In Aetna Life Ins. Co. v. Aird (5th Cir. 1939), 108 F.2d 136, the issue was whether a trailer house used as a dwelling was a "building" within the meaning of an in-

surance policy. The Court held that it was, and in part stated:

"Streamlined, mounted on two wheels, and capable when connected with beast or vehicle having motive and tractor power, of swift and easy motion, though it was, it was not automotive, and it was not bought to be, nor was it, used, except incidentally, for locomotion. The only use made of its movability was to get it to the place where it was to be used, just as ready cut houses, if small enough, may be and sometimes are moved, and set up complete. Well, indeed completely, equipped as a place in which to live, with beds, bath, toilet, cooking facilities, side walls, a roof and floors, and with cross walls subdividing it into parts, it was bought and equipped to be, and at the time of the fire, was being and had for a week been, used, as deceased's residence and office combined. In effect, a modern efficiency apartment, it had been transported to the oil field where the deceased was drilling a well, and there, disconnected from the automobile, it had been raised up, its four corners supported by four heavy special jacks placed directly underneath its substantial steel braced beamed floor, and its outside walls. Thus, what had been built for a dwelling or place to live, movable from place to place, was at rest, and was being occupied as a dwelling, as completely as if, instead of a trailer, it were a ready cut or knocked-down house, transported to the field, either set up, or in units for setting up.

"As such, it was certainly a building, in the sense of a dwelling, 12 C.J.S., Building p. 378; Rouse v. Catskill & N. Y. Steamboat Co., 59 Hun. 80, 13 N.Y.S. 126; Neekamp v. Huntington Chamber of Commerce, 99 W.Va. 388, 129 S.E. 314. It was too, a building, in the generic sense of something built or constructed for use as a shelter or habitation for man or beast. If instead, of a completed trailer, the material which made it up, had been assembled on the lease, and there built into a dwelling or habitation for deceased's use, no one could, we think, contend that the resulting structure was not a building. The fact that it was completed before transportation and equipped with wheels to roll it, does not, we think, at all change the undisputed fact that in every essential respect, it was built for and was being used by deceased, as a shelter and habitation, in short, a dwelling. The District Judge, in his opinion pointed out the great scope and breadth of the term, and to the many holdings of the courts, that comprehensive, generic, and having no inflexible meaning, applicable to all cases alike, but having flexibility and varying with the context and surrounding circumstances, those who would seek a narrowing construction for it in a particular context, must show sound reason for that narrowing.

\*  \*  \*  \*  \*  \*

"\* \* \* What is dominant here, as to the trailer, is the purpose for which it was built and used, and to which it is primarily adapted. That purpose, to be used as a shelter and habitation for deceased, in short, a dwelling house, stands out in and dominates the case. A dwelling house, constructed so as to be easily movable, at times, running or standing on its wheels, at times, sitting fixedly on jacks or other rigid support, it is still at all times, a dwelling house. A built dwelling house, having greater commodiousness, convenience and adaptability, to the uses of a house dweller, than huts, shacks, hovels, shanties and even many small houses of a better grade, all of which are of course, buildings. If we should suppose the case of a hut, shanty, or other small house, sitting upon a wagon or truck, having wheels, so that it might be moved about, from place to place, for the convenience and use of the dweller, I think it would hardly be contended, that a dweller in it holding a policy of the kind at bar, was not covered as to injuries caused by its burn-

ing while he was in it, because the house could be, or was being moved about on wheels.

"I see no more reason to deny coverage to a building of the trailer type, merely because it has wheels to run on."

Appellee's point in support of the judgment—that the trailer house in question is not a building or improvement within the meaning of the restrictive covenant here involved—is overruled.

■ Aside from the question of whether the trailer house is a building, the remaining dispositive issues relate primarily to whether the evidence is legally sufficient to support the jury answers to special issues 2 through 7. We agree with appellant that it was not. In view of the jury finding in answer to special issue No. 1—that locating the trailer house on the tract involved without Alcoa's written consent constituted a distinct and substantial breach of the restrictive covenant in question—appellee was required to establish either that Alcoa acted arbitrarily or capriciously in refusing to grant appellee's request or that Alcoa was estopped to enforce the restrictive covenant in question. We hold that the evidence was not legally sufficient to support either of these defenses and that the injunction sought by Alcoa should have been granted.

We will now consider appellant's contention that Alcoa did not act arbitrarily or capriciously in refusing to consent in writing to Kohutek maintaining a trailer house as a residence on the land in question. Here Alcoa says that the evidence (1) conclusively established that issue in its favor, or (2) was legally insufficient to support the jury finding on special issue number 2, or (3) was factually insufficient to do so.

The evidence is conclusive that Kohutek sought Alcoa's written consent to the placing of a trailer house on the 2.5 acre tract in question, that Kohutek did not submit any plans and specifications for a building

or improvement to Alcoa, and that Alcoa has not given its written approval to Kohutek's request. In early 1969 Kohutek, his wife and children were living in a rented house in Port Lavaca, Texas. On February 2, 1969, the owner advised Kohutek that he must vacate the house by February 25, 1969. Thereafter, Kohutek contacted Linville, who had purchased from Alcoa, concerning the purchase of the 2.5 acre tract here involved. Linville quoted a price for the land, but Kohutek did not commit himself to purchase it. On Sunday, February 16, 1969, Kohutek and his wife located a trailer house at Burl Mobile Homes in San Antonio, Texas, that they considered purchasing. Kohutek filled out the necessary forms for a credit check and informed the salesman that he would notify him and send the down payment later in the week " * * * if everything went o. k." On Wednesday, February 19, 1969, Kohutek went to the city manager's office in Port Lavaca to secure information about connecting a trailer house to city utilities. A clerk in that office informed Kohutek that the city had no zoning ordinances prohibiting trailer houses on the land but that the land " * * * had a restriction with Alcoa." Kohutek then phoned George A. Rhoades, the tax and housing employee of Alcoa. During the conversation Kohutek advised Rhoades that he was contemplating purchase of the Linville tract in Lynnhaven and inquired as to the possible use of a trailer house as a residence on the tract. Rhoades read to Kohutek the restrictive covenant in the Linville deed. The facts just stated concerning the telephone conversation between Kohutek and Rhoades are undisputed, but in some other respects the testimony is conflicting. Kohutek's testimony concerning the conversation was in part as follows: After Rhoades advised him about the restrictive covenant in the deed to Linville, Rhoades said that there was no restriction as to mobile homes and "that these things were a matter of formality, to send him a letter as soon as Mr. Linville, if we came to a conclusion on this deal." Kohutek said the conversation was

very informal. Rhoades' testimony concerning the conversation with Kohutek was in part as follows:

"Q   Did he ask you whether or not Alcoa would consent to the placing of a trailer home on the land in question?

A   Yes, sir.

Q   What did you inform him?

A   I told him there were these conditions in the deed and since there were no plans or specifications for a home such as he had in mind he would have if he completed the deal to write us a letter stating just what he planned to do and I would submit it for approval and try to expedite it for him."

Rhoades further testified that he did not have any actual authority to grant consent or permission to anyone to park a trailer house on property owned by Alcoa and there was no contradictory evidence on that subject. Subsequently, Kohutek phoned Burl Mobile Homes and obligated himself to purchase a trailer house. Kohutek was informed that the trailer house could be delivered to him in Port Lavaca on Tuesday, February 25, 1969, and he sent Burl Mobile Homes a down payment on it. On the evening of February 19 or 20 Kohutek phoned Linville and orally agreed to purchase the 2.5 acre tract in Lynnhaven. Linville agreed to meet Kohutek in Port Lavaca to work out the details of the sale. On Saturday, February 22, 1969, Kohutek met Linville in the office of Linville's attorney, and the terms of the sale were agreed upon. At this meeting Linville asked Kohutek if he was aware of the restrictive covenant in the deed from Alcoa, and Kohutek informed Linville that he was. Linville's attorney handed Kohutek a copy of Linville's deed from Alcoa, and Kohutek read the restrictive covenant. On Monday morning, February 24, 1969, Kohutek applied to the city water works for water and sewer taps which were installed the after-

noon of the same day (and ultimately tied in to the trailer house on February 27). Also, on the morning of February 24, 1969, Kohutek informed Rhoades that he had contracted to purchase the Linville tract. Rhoades advised Kohutek to write Alcoa a letter requesting approval to place a trailer house on the land. On the afternoon of February 24, 1969, Kohutek delivered the following letter to Rhoades' office:

"116 Jennings
Port Lavaca, Texas
February 24, 1969

Aluminum Company of America
Point Comfort, Texas
Attention Mr. George Rhodes
Gentlemen:

The following is a request that 1, Albert W. Kohutek, be permitted to park a mobile home as a temporary home for two to three years, with plans to build a home in the near future.

Property is located south of Calhoun Street, Block 9, 2.5 acres formerly owned by Jay Linville and bought by me on February 22, 1969, handled by Attorney George F. Rhodes, 524–2971.

Mobile home is a new 1969 Parkwood 12 x 64 trailer. Intend to park trailer on west end of property. The trailer will arrive in Port Lavaca February 25, 1969, and will be set up completely on foundation by movers. Due to the time element, we would greatly appreciate your immediate attention to this request. I am hoping for only one permanent move and set-up of mobile home.

Thanking you for your consideration.

Yours truly,
/s/ Albert W. Kohutek
Albert W. Kohutek
AWK:jb
Enclosure"

Attached to the letter was a plat showing where Kohutek wished to place the trailer and a note containing Kohutek's phone

number. Rhoades immediately delivered the letter to Mr. Wahlsten, Alcoa's chief executive officer at Point Comfort, who contacted Alcoa's home office in Pittsburgh in an effort to determine what the intention of the covenant was. Alcoa's management decided that it must refuse to approve Kohutek's request in order to protect the people who owned property in Lynnhaven. At the time such decision was reached Mr. Wahlsten did not know Kohutek and neither he nor Alcoa had anything against Kohutek and had no reason to harm him.

The trailer house was delivered to Kohutek in Port Lavaca on Tuesday, February 25, 1969. During the morning of that day Rhoades discovered that Kohutek had placed the trailer house on the land and that it was being mounted on blocks. Rhoades immediately notified Mr. Wahlsten. Rhoades testified:

"Q As of February 25, 1969 had Alcoa given Mr. Kohutek written consent to place a trailer house on this lot?

A Not as of that date, no, sir.

Q As of February 25, 1969 had Alcoa given any oral, word of mouth, consent to Mr. Kohutek to place this trailer house on this property?

A No.

Q Is it your testimony that as of the time Mr. Kohutek placed this trailer house on this lot he had no consent from Alcoa to place a trailer house there?

A That is right."

On Wednesday, February 26, 1969, Kohutek called Rhoades and asked if he had received Alcoa's consent to place a mobile home on the tract. Rhoades advised Kohutek that Alcoa did not so consent, and on the same date wrote Kohutek the following letter:

> "February 26, 1969
> Mr. Albert W. Kohutek
> 116 Jennings
> Port Lavaca, Texas 77979
> Dear Sir:—

This is to acknowledge receipt of your letter of February 24, in which you requested permission to park a Mobile Home on the 2.5 Acre Tract of land in Block 9, Lynnhaven, which land was originally sold by Aluminum Company of America to J. W. Linville, Jr., by deed dated May 3, 1962, and recorded in Volume 185 Page 352 of the Calhoun County Deed Records.

Pursuant to the condition contained in the above mentioned deed, which condition is a covenant running with the land, this is to advise that Aluminum Company of America does not approve of your proposal to park a Mobile Home on this acreage.

> Very truly yours,
> /s/ Geo. Rhoades
> Geo. A. Rhoades

> "Superintendent of Real Estate
> Aluminum Company of America
> Point Comfort Operations
> GAR/r"

Since February 26, 1969, Kohutek has refused to move his trailer house. On February 27, or 28, 1969, Cecil H. Gear, Alcoa's accounting manager, met with Kohutek in an attempt to resolve the dispute. Gear testified that in the course of this meeting Kohutek did not claim that Rhoades had given him permission to place a trailer house on the land. Kohutek, who was the last witness to testify, did not dispute such testimony.

On March 3, 1969, J. W. Linville executed a warranty deed conveying the property in question to Kohutek. This deed adopted by reference the restrictive covenant contained in the deed from Alcoa to Linville. On March 19, 1969, Kohutek phoned Mr. Wahlsten and requested a meeting, and Mr. Wahlsten consented. The meeting was held, and the problem of the trailer house and possible solutions were discussed. Wahlsten testified that during this meeting Kohutek did not claim that Mr. Rhoades had orally consented to him placing the trailer house on the Linville

tract. Kohutek also did not dispute that testimony and as to such meeting testified:

"Q * * * what was the substance of that conversation?

A I had called his secretary and made an appointment and went out. He said he would be glad to discuss the matter with me. And he told me at this time that Alcoa's, I think, situation involving this, that he did not have anything against me and he hoped I didn't take him personally. I told him I didn't. And he said that they owed it to the property owners in the Lynnhaven subdivision to protect these covenants in these deeds and as such he was protecting me also by doing this.

Q And did you agree he was protecting you?

A No. No, I couldn't really."

Kohutek further testified:

"Q * * * do you more or less feel you have a right to stay there with your trailer house, Wayne?

A Yes, sir.

Q If you didn't, would you get off?

A Definitely. If I thought I was hurting someone, I would move."

* * * * * *

"Q On what do you base your feeling you have a moral right to stay there?

A I bought the property, Mr. Holstead.

Q It is much like what your friend said this morning, it is your property, you ought to be able to do with it what you want?

A Yes, sir."

Appellant's basic position concerning the deed restriction in question is that it is valid and enforceable provided the right of refusal to approval of plans, buildings or improvements is based upon a reasonable determination made in good faith and not capriciously or arbitrarily. See 19 A.L.R. 2d 1268, annotation "Validity, construction, and effect of restrictive covenant requiring consent of third person to construction on lot."; Kirkley v. Seipelt, 212 Md. 127, 128 A.2d 430 (1957); Hannula v. Hacienda Homes, 34 Cal.2d 442, 211 P.2d 302, 19 A.L.R.2d 1268 (1949); Parsons v. Duryea, 261 Mass. 314, 158 N.E. 761 (1927); Jones v. Northwest Real Estate Co., 149 Md. 271, 131 A. 446 (1925); Harmon v. Burow, 263 Pa. 188, 106 A. 310 (1919). See also: Hoffman v. Balka, 175 Pa.Super. 344, 104 A.2d 188 (1954); Stanford v. Brooks, 298 S.W.2d 268 (Tex.Civ.App., Ft. Worth, 1957, n. w. h.). Appellee does not disagree with the rule relied on by appellant but says that here the evidence is legally and factually sufficient to support the jury finding, on special issue 2, that Alcoa's refusal was arbitrary and capricious.

The only reason shown by the evidence for Alcoa's refusal to grant Kohutek's request to place a trailer house on the 2.5 acre tract purchased by him is that Alcoa was attempting to protect the property values of the permanent residences and their owners in Lynnhaven, along with Alcoa's right of reasonable control of buildings and improvements placed on the acreage tracts. Appellee also relies on evidence showing that Alcoa had previously consented under similar deed restrictions to construction on other acreage lots of two churches, a boat house and a sewage treatment plant. That action by Alcoa does not cause the refusal of Kohutek's request to be unreasonable, arbitrary or capricious. The evidence does not show that the uses of such other acreage tracts are inharmonious with the adjoining area set aside for permanent residences. The locations of the boat house and sewage disposal plant are shown to be at or near the outer perimeter of the acreage lots and are isolated from the basic residential area, whereas most of the Kohutek tract is immediately across a street from the same.

Every residential lot in Lynnhaven is expressly made subject to a restriction which provides that no trailer shall at any time be used thereon as a residence, but the acreage tracts are not so specifically restricted. The tracts in the latter classification which have been sold by Alcoa have been conveyed subject to a restrictive covenant running with the land which requires the landowners to obtain Alcoa's consent in writing before placing any building or improvement upon the land. The evident purpose of such a covenant is to allow Alcoa to control the development of the acreage tracts so as to prevent the owners thereof from using their land in ways which would be incompatible or inconsistent with the kind of residential subdivision here involved. Alcoa's refusal to consent to Kohutek's request is consistent with the fact that there are restrictions against the use of trailer houses in the residential lots of Lynnhaven, the fact that there is no other trailer house in Lynnhaven, and the fact that Alcoa does not want to presently permit trailer houses in Lynnhaven. Kohutek's ownership of the 2.5 acre tract does not carry the right to disregard the contractual obligations imposed by the restrictive covenant. Alcoa's management employees have met with Kohutek on several occasions in unsuccessful attempts to resolve the matter and the residents of Lynnhaven have also endeavored to secure the removal of Kohutek's trailer house from Lynnhaven.

Under the evidence, the authorized agents of Alcoa were entitled to reasonably conclude that the placing of a trailer house on the tract in question constituted a use of the land which adversely affected the other property in Lynnhaven and was inharmonious with the residential lots. The evidence was legally insufficient to raise an issue and support a finding that Alcoa acted arbitrarily or capriciously in refusing to consent in writing to Kohutek's request. Appellant's points one and two are sustained. Under such holdings we need not reach appellant's point three relating to factual

insufficiency of the evidence to support the jury answer to special issue No. 2.

Appellant's remaining points (4–14) relate to whether Alcoa was estopped from asserting the deed restriction in question and whether the evidence was legally and factually sufficient to raise and support the jury answers to special issues 3–7. We agree with appellant that it was not estopped and that there was no evidence to support the answers to the last-mentioned issues.

The basic rules relating to the doctrine of estoppel are stated in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932 (1952) as follows:

"On the question of estoppel we find that 'In order to constitute an equitable estoppel or estoppel in pais there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.' 31 C.J.S., Estoppel, § 67, page 254. Also, 'Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or omission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel.' Id. § 77, page 282, et seq."

■ The burden of proving the essential elements of estoppel is on the party asserting it. The failure to prove any one or more of such elements is fatal and the

opponent of the party relying on an estoppel is not required to show the absence of any of its component elements. Concord Oil Co. v. Alco Oil and Gas Corp., 387 S.W. 2d 635 (Tex.Sup.1965).

· The evidence in this case conclusively establishes that notice of the truth was effectively brought to the attention of Kohutek, the party seeking to invoke the doctrine of estoppel. On February 19, 1969 a clerk in the city manager's office informed Kohutek that the 2.5 acre tract was subject to a restriction. In response to Kohutek's inquiry Rhoades read the restrictive covenant to Kohutek over the phone. On February 22, 1969, Linville's attorney advised Kohutek of the restrictive covenant and Kohutek read the deed in which such covenant was contained. Kohutek knew what was required by Alcoa as is evidenced by his letter dated February 24, 1969. Kohutek cannot now successfully claim that due to deception by Alcoa he did not know the true facts when he moved his trailer house onto the 2.5 acre tract on February 25, 1969. The evidence conclusively establishes and Kohutek, while on the witness stand, conceded that he deliberately proceeded to complete the transaction with Linville and received a deed to the land in question on March 3, 1969, some five days after he had been given express notice by Alcoa that it would not consent to the placing of a trailer house on the tract in question.

Rhoades testified that he never represented to Kohutek that Alcoa consented to his placing a trailer house in Lynnhaven and Kohutek admitted that Rhoades did not expressly say that Alcoa's consent had been given. Such admission is supported by the facts showing that on February 24, 1969 Kohutek wrote Alcoa a letter seeking Alcoa's consent, on February 26, 1969 Kohutek called Rhoades to find out if he had Alcoa's consent, and that prior to the filing of this suit Kohutek did not claim that Rhoades had represented to him that he had Alcoa's consent to place a trailer house on the 2.5 acre tract.

A careful examination of Kohutek's testimony reflects that he relies on his own subjective impression and construction of his telephone conversations with Rhoades in order to arrive at a conclusion that Alcoa would upon written request grant its consent to the placing of the trailer house on the tract in question. But such testimony does not raise an issue as to whether Rhoades made a false representation of a material fact. The worst that can be said of Rhoades is that he attempted to inform and assist Kohutek to obtain the consent he sought but did not secure from Alcoa's officials who had the authority to grant or refuse it. The jury's finding on Special Issue No. 3 that on February 19, 1969 Rhoades falsely represented to Kohutek that Alcoa consented to his placing a trailer house on the land in question is not supported by the evidence. Kohutek has thus failed to prove the first element of estoppel and the jury's answers to the remaining conditionally submitted estoppel issues in any event are immaterial and should be disregarded. The essential elements of estoppel are lacking here and Kohutek's defense based upon it fails. Appellant's points 4, 5, 7, 9, 11 and 13 that there was no evidence to support the jury findings on special issues 3–7 are sustained. Under such holdings we do not reach appellant's points 6, 8, 10, 12 and 14 relating to factual insufficiency of the evidence to support the jury answers to issues numbers 3–7.

Appellant's motion to disregard the jury findings on Special Issues 2–7, and to render judgment in its favor should have been granted.

The judgment of the trial court is reversed and judgment is here rendered that appellee Albert W. Kohutek be restrained and enjoined from parking, maintaining, residing in or otherwise using or residing in a trailer house or mobile home on the tract of land here involved, until May 3, 1972, except that said appellee shall be permitted to remove said trailer house or mobile home from said property and to make

such use of it as may be necessary in such connection.

Reversed and rendered.

NYE (dissenting).

Aluminum Company of America brought this suit seeking a mandatory injunction against a property owner (Albert Wayne Kohutek). Based on a jury verdict, the trial court rendered judgment denying the injunctive relief. The appellant (ALCOA) contends here that there was no evidence to uphold the judgment; and that this Court should reverse the trial court judgment and enter a permanent injunction as a matter of law. I cannot agree. I therefore respectfully dissent.

There are a number of reasons why the judgment of the trial court should be affirmed. But basically they are that:

1. Alcoa failed to plead and prove conclusively an uncontroverted case authorizing this Court as a matter of law to render a mandatory injunction based on a single restrictive covenant contained in a subsequent grantee's deed.

2. Based upon the familiar rules that guide the appellate courts, there was ample evidence to uphold the jury's verdict on the special issues which denied the relief sought by Alcoa.

Alcoa's petition stated in substance, that a certain condition in Kohutek's deed was included in order that Alcoa could exercise some control over the future development of the real estate it conveyed. Its petition stated in part that its control was retained in order to protect Alcoa and all purchasers of Alcoa property and to prevent undesirable uses being made of the land conveyed by the plaintiff. Alcoa further plead that it would suffer irreparable damages in that the value of the real estate in the vicinity of Kohutek's land would diminish unless he was enjoined. The petition further stated that it had no adequate remedy at law unless an injunction would be granted and therefore asked that such an injunction issue, commanding Kohutek from parking or in otherwise using or occupying his mobile home on the above property, and praying that Kohutek be ordered to immediately remove the trailer house from the above described property.

The tract of land in question was free of all restrictions, conditions and covenants except the condition contained in a deed from Alcoa to appellee's grantor. The single restriction stated that for a ten-year period (beginning May 3, 1962) " * * * no building or other improvement shall be placed, constructed, or built upon the land hereby conveyed unless plans and specifications for the same have been submitted to Grantor (Alcoa) and Grantor has given its written approval of the same; * * * " The deed provided that this condition was to be a covenant running with the land, and was to bind the grantee, his heirs and assigns.

The law relative to the validity, construction and effect of a restrictive covenant in a deed requiring the consent of a third party to construct on a lot, has not been before the Texas appellate courts. There are some guidelines from the Texas decisions and from the out of state decisions that seem appropriate. Courts generally have manifested disfavor with covenants that restrict the use of property. As a general rule, in construing such covenants, all doubts are resolved in favor of the free use of property and against restrictions. Southampton Civic Club v. Couch, 159 Tex. 464, 322 S.W.2d 516 (1958) and authorities cited therein. In actions to enforce a restriction, the restrictive language in the deed must be construed in the light of surrounding circumstances and conditions. There is, of course, the presumption with regard to conveyances, that they import the greatest possible estate and the least restriction on the use of the property granted, compatible with the language in the deed. Although covenants restricting the free use of property are not favored, they will be enforced, where the restrictions are con-

fined to a lawful purpose and are within reasonable bounds. The language employed in expressing them must be clear. 16 Tex.Jur.2d, Sec. 129, p. 36 and Sec. 110, p. 2; Chandler v. Darwin, 281 S.W.2d 363 (Tex.Civ.App.–Dallas 1955). Most all of the cases hold, that a party seeking to enforce a restrictive covenant has the burden of proving that a general building plan or scheme was intended, and that the restrictions were imposed for the benefit of the grantor and other property owners. Massengill v. Jones, 308 S.W.2d 535 (Tex.Civ. App.–Texarkana 1957, n. r. e.); see 26 C.J.S. Deeds § 171, p. 1176.

There were no factual jury findings favorable to Alcoa. All of the defensive findings were favorable to the defendant, Kohutek. The only finding Alcoa contends is favorable to it, is that the violation of the restrictive covenant was a *"distinct and substantial breach"* of the restriction. This I believe is a question of law as the cases seem to determine. In any event it is not decisive of this case.

Alcoa argues that the rights of a developer of a subdivision to enforce restrictive covenants requiring his consent to build or make improvements, has not been generally questioned. Citing cases from California, Maryland, Massachusetts and Pennsylvania. It concedes, however, that in the exercise of a right of refusal to approve the plans or improvements, such action must be based upon a reasonable determination made in good faith, and the request must not be capriciously or arbitrarily refused. Concluding its discussion of the cases, appellant argues that the restrictive covenant in question requiring Alcoa's written consent, is valid, and will be enforced *if Alcoa's rights thereunder are reasonably exercised.*

Conceding for the sake of argument, that Alcoa had proved reasonableness and its good faith determination; that it did not act capriciously or refuse arbitrarily, still I am not convinced that these tests would be applicable to this particular single re-

strictive covenant in Texas or elsewhere. A brief study of the out of state authorities cited by the appellant and others reveal, that before such restriction is enforceable, there are certain basic requirements that must be apparent before one would be entitled to relief in a court of equity.

In the case of Hannula v. Hacienda Homes, 34 Cal.2d 442, 211 P.2d 302 (1949), annotated in 19 A.L.R.2d at 1268, the California Supreme Court held in a declaratory action suit, that a party had authority (under a similar restriction) to make a determination of the plans and specifications as well as the building site, so long as the exercise of such authority was reasonable and made in good faith. The question of reasonableness (which was stipulated to), and whether the party acted arbitrarily or capriciously was left open and was not determined by the appellate court. However, in deciding the case, the Court took notice that there were numerous restrictions and restrictive covenants covering the subject property and that these restrictions were stated to be for the benefit of all owners of property in the subdivision.

A Maryland case (Kirkley v. Seipelt, 212 Md. 127, 128 A.2d 430 (1957), recognized the validity of a similar restriction and held that the basis for refusal to approval must bear some relation to the general plan of overall development. (There were numerous covenants and conditions and restrictions contained in the instrument affecting the subject property). The Court said that "There can be no question as to the intention of the parties in the case at bar. The language used in the covenants, partly quoted above, makes plain the desire to regulate the construction of the dwellings in such a manner as to create an attractive and desirable neighborhood. * * *"

Alcoa cites the case of Parsons v. Duryea, 261 Mass. 314, 158 N.E. 761 (1927). The Massachusetts Court in considering a restriction similar to the one before us concluded from the evidence that the restrictions were connected with a general scheme

for the development of a tract of land and the plaintiffs were acting in good faith.

The Pennsylvania case of Hoffman v. Balka, 175 Pa.Super. 344, 104 A.2d 188 (1954) recognizes that building restrictions are not favored and must be strictly construed; that they cannot be enlarged or extended by implication; and that all doubts should be resolved against the restriction and in favor of the free and unrestricted use of the property owners. There were numerous restrictions and covenants covering the subject property, one of which required the approval of the building by a building committee. The Court outlined in detail all of the standards that were set up in the restrictions themselves to guide the building committee in its determination and held that from the facts, the committee's action was not unreasonable.

In each of the cases cited by the appellant a definite scheme of development was proved by the restrictions affecting the subject property that benefitted all of the owners of the property in the subdivision, and in each case a definite set of standards was evident from the restrictions themselves which covered the property in question.

The Ohio Supreme Court considered a case much more analogous to the situation before us than any of the cases cited by the appellant. Exchange Realty Company v. Bird, 16 Ohio Law Abst. 391 at 394. There the Ohio Supreme Court said that:

"While such a restrictive covenant in a deed requiring the submission to and approval by the grantor of all plans for the erection of a house is held to be a valid and enforceable covenant * * * it will be noted that such a covenant is always used in connection with some general plan or scheme or some other designated or stated restriction within which such approval may operate or that the covenant regulates the scope of the approval * * * *"

Concluding, the Court said:

"We find no decision or text to the effect that a covenant requiring the submission to and approval of plans by the grantor, standing alone, without any other restriction, is enforceable."

In Kline v. Colbert, 91 N.E.2d 299 (Ohio Com.Pl.) the Ohio intermediate appellate court again rejected a similar restriction on the basis that there were no standards to be applied. That Court, quoting further from the Exchange Realty Company case, supra, said:

"If this language were the only restriction in the deed, it surely would be entirely too vague and indefinite to be enforceable in a court of equity, and would be totally ineffective, as standing alone it would be devoid of any general plan or scheme, would be unlimited in its scope, and would leave the purchaser subject to the mere whim of the seller and permit the seller to require a structure of any kind or value to be erected on any lot, and could result in a mere shack being built on one lot, and a palatial dwelling on an adjoining lot; or the seller might require any other kind of building, business block or factory to be built on any particular lot. The purchaser would thus have nothing of value; and such restrictions would therefore seem to be against public policy and be void." (See 19 A.L.R.2d 1272 for a discussion of this case).

Other states have considered this problem and all require guidelines so that such a restrictive covenant affords protection as well as due process. See Rhue v. Cheyenne Homes, Inc., 449 P.2d 361 (Sup.Ct. Colorado, 1969); Voight v. Harbour Heights Improvement Association, 218 So.2d 803 (Dist.Ct. of App., Florida, 1969); Community Builders, Inc. v. Scarborough, 149 So.2d 141 (Court of App., Louisiana 1962); Caullett v. Stanley Stilwell & Sons, Inc., 67 N.J.Super. 111, 170 A.2d 52 (1961); and La Vielle v. Seay, 412 S.W.2d 587 (Ct. of App. Kentucky, 1966).

In order to reverse and render the trial court's judgment based upon the jury verdict, there must be a complete absence of evidence of the vital defensive facts and in addition the evidence must establish conclusively that Alcoa is entitled to recover as a matter of law. Therefore, all of the facts must be considered in the light of the familiar rules in such cases.

Albert W. Kohutek and his wife worked in the Calhoun County Hospital and lived in the city of Port Lavaca in a rented house. On or about February 2, 1969, Kohutek's landlord told him that he would have to move by February 28, so he and his wife started looking for other rent property. By the middle of the month when he was unable to find a suitable house to accommodate his wife and six children, he inquired about the prospects of obtaining some acreage in the Lynnhaven Subdivision as a mobile home location. A friend of his had bought some acreage property in this subdivision and told him he thought the acreage next to him was for sale. On February 16 Kohutek and his wife shopped for a mobile home in San Antonio, Texas, and found one that they liked. After making preliminary arrangements for the purchasing of this home (such as credit arrangements, down payment requirements, time of delivery etc.), they came back to Port Lavaca and contacted a Mr. Linville who owned the acreage in the Lynnhaven Subdivision. Linville offered to sell his property to Kohuket for $5500.00. A day or two later Kohutek made inquiry with the City of Port Lavaca relative to zoning regulations, utility connections and the length of time it would take to obtain sewer and water taps on the Linville tract for a mobile home. The City Manager told Kohutek that there were no problems as far as the City was concerned but that he thought there might be some restrictions on this property as far as Alcoa was concerned. They had developed the property and had certain restrictions on the residential section of the Lynnhaven Subdivision.

Kohutek called George A. Rhoades at the Alcoa plant. This conversation was very important, as the jury's answers to some of the special issues were based in part on this event.

In order to fully understand the basis for the jury's verdict, some background evidence and certain favorable evidence must be considered. When a no evidence point is raised, the appellate court must follow the rule of reviewing the evidence in its most favorable light in supporting the findings of the vital facts and the Court must consider only the evidence and the inferences which support the findings and reject the evidence and inferences which are contrary to the findings. Robert W. Calvert, "No Evidence" and "Insufficient Evidence", 38 Texas Law Review 359; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The Lynnhaven Subdivision was divided into acreage tracts and 250 residential lots. The residential lots were subject to a lengthy detailed set of deed restrictions. It is important to the decision of this case to know how extensive these restrictions were in the residential section as it shows a definite plan or scheme, and the building committee was given definite guidelines to assist it in making its decisions. There were no restrictions filed on the balance of the subdivision which included the acreage tracts when the subdivision was platted. Therefore, there was no plan or scheme or any guidelines to follow. Without unduly lengthening this opinion a résumé of the restrictions was as follows. In this residential section, the restrictions required certain defined building set back lines. Each dwelling was required to contain a minimum square footage of floor space. The lots were restricted against offensive trades, billboards and provided that "No trailer, basement, fence, shack, garage, barn or other outbuilding erected on any lot shall at any time be used as a residence, temporarily or permanently, nor shall any structure of a temporary character be used

as a residence." It also provided that "No single family dwelling erected on any lot shall cost less than $3500.00." The restrictions set up definite guidelines for utility easements, restricted the keeping of livestock, poultry or swine; prevented the keeping of trash, garbage, ashes or other refuse from being thrown on any lots; set up certain requirements as to fences, hedges and walls and required *the approval in writing by a named building committee* " * * * *for conformity and harmony of external design with existing structures in the sub-division, and the location of the buildings with respect to the property and building lines"*; and finally provided that the restrictions should last for twenty-five years (i. e. until 1975).

On one side of the subdivision backing up to a bayou and extending on out to the State Highway were some acreage tracts. They were approximately one to five acres in size. The above restrictions did not apply to these acreage tracts. However, as each of the acreage tracts were sold, Alcoa placed a single condition on each tract at the time it was conveyed, stating that for a ten-year period "no building or other improvement shall be placed, constructed or built upon the land hereby conveyed until plans and specifications for the same have been submitted to grantor (Alcoa) and grantor has given its written approval of the same."

The uses of these acreage tracts were many and varied. Originally, one was to be for recreational purposes, although the testimony was that this fizzled out and no use of it as such was made; on one tract was located a sewage disposal plant. Others had been sold to various churches. On the corner of one of the tracts, a map of the subdivision shows that Gulf Oil Company owned a portion of one tract. On still another was a boat house. Some of the tracts were vacant and were still owned by Alcoa and were not subject to any restrictions or conditions whatsoever.

George A. Rhoades was superintendent of the real estate for the Aluminum Company of America and agent for Alcoa as its petition indicates. The evidence was that Rhoades had been an employee of Alcoa for twenty six years and had lived in Port Lavaca in the Lynnhaven Subdivision and had been connected with this subdivision since its inception in 1949. He was in charge of the construction of the subdivision in its entirety and had served as chairman of the building committee. Kohutek and Rhoades knew each other and were on a first name calling basis. Kohutek's conversation with Rhoades was related a number of times by both parties throughout the trial, both on direct examination and repeated on cross-examination. Each version was not necessarily complete and all versions varied some.

It was undisputed that Kohutek called Rhoades to inquire about the possible restrictions on the Linville property (acreage tracts), which he was contemplating buying. With this background in mind, the favorable version of the conversation which the jury was at liberty to believe, was as follows:

Kohutek told Rhoades that he was contemplating buying the Linville acreage for the purpose of putting a mobile home on it. That he was operating under a definite time limit because he was having to move. According to the evidence, Rhoades replied: "Wayne, that property is not part of the Lynnhaven Subdivision. This line runs, if I am not mistaken, down the center of the street. As far as I know there are no restrictions on mobile homes." Rhoades did tell Kohutek that he thought that there was some condition in the deed from Alcoa to Linville (the present owner of the tract in question) so he got a copy of the deed and read the condition to Kohutek (i. e. requiring Alcoa's approval of building plans). During the conversation Rhoades told Kohutek that there was nothing in the deed restricting mobile homes and that this

(condition as to Alcoa's approval) was a matter of formality. Rhoades then told Kohutek that when he closed the deal with Linville (i. e. purchase of the Linville tract) "get in touch with me". In this connection Rhoades told Kohutek to write Alcoa a letter as to what he intended to do and he told Kohutek what to put in the letter. Rhoades then instructed Kohutek (after he had closed the deal with Linville) to bring the letter to his office and if he was not in to leave it on his desk. He would expedite it!

After this conversation with Rhoades, Kohutek started to make all the arrangements to buy the land, to purchase the trailer, to secure utility connections, and even started selling his furniture from his rented house, as the mobile home was furnished throughout.

The evidence was that Kohutek called Linville and asked him if he would accept a $1,000.00 down payment and monthly payments on the balance for the acreage tract. Linville agreed to this proposal and they made arrangements to meet in his attorney's office on Saturday, February 22. Kohutek called the mobile home agency in San Antonio and bought a new mobile home for $7400.00. He mailed them his check for $800.00, being the down payment and made arrangements for the mobile home to be delivered on the lot on Tuesday, February 25. He went to the City and ordered the water and sewer taps and arranged for all utility connections at a cost of $160.00. On Monday, February 24, following the closing of the deal with Linville as to the purchase of the tract, he hand-delivered the letter to Rhoades which stated that he was requesting permission to place a mobile home on the Linville tract; that the mobile home would arrive on Tuesday, February 25 and would be completely set on a foundation by the movers. On Tuesday the mobile home was delivered, set up and the utility connections were made. On Wednesday Kohutek heard some rumors at the hospital where he worked, that Alcoa was dissatis-

fied with him having the mobile home at the property. So he called Rhoades. Rhoades told Kohutek that he was not supposed to move the trailer on the property until he had obtained Alcoa's permission. Kohutek said: "Well, now, wait a minute. The mobile home, we talked about this and I told you the mobile home was going to be there on the morning of the 25th." With this Rhoades calmed down and told him that he had not had a chance to meet with the Alcoa people relative to his letter. However, that same day (Wednesday, February 26) Rhoades wrote Kohutek telling him that Alcoa did not approve of his proposal to park the mobile home on the land. Kohutek refused to move the mobile home contending that he had already had permission from Rhoades. Whereupon, Alcoa brought suit for injunctive relief to force Kohutek to move the mobile home.

The jury found that Alcoa acted arbitrarily and capriciously in refusing to give Kohutek consent to maintain a trailer house as a residence on the property in question. They further found issues of estoppel against Alcoa. I believe that the foregoing evidence substantiates the jury's verdict.

There was other evidence that Alcoa acted arbitrarily and capriciously. At one time they offered to waive the plans and specifications requirement on the trailer home if Kohutek would start constructing a residence on the subject property within ninety days, although no other residence existed on any of the acreage tracts and there was no evidence that Alcoa insisted on such requirement from any other property owner.

There was evidence that a boat barn was built on another tract with Alcoa's knowledge, although there were no plans and specifications submitted and no consent given. Alcoa took no action as to this property owner and only asked him to submit plans and specifications for the boat barn after the filing of this suit. The owner then drew up his own plans which

varied materially from the actual barn that was constructed.

It was conceded that a junk yard could be established on any of the acreage tracts including the subject property as there would be no necessity for building plans or specifications that would be subject to Alcoa's approval.

The evidence clearly shows that Alcoa could convey some of these acreage tracts that it still owned without any restrictions whatsoever for commercial or any other use.

A sewage disposal plant with Alcoa's consent was established on one of the tracts of land. Alcoa admitted that it did not require consent for fences to be erected on any of the acreage tracts as it did not consider them to be "improvements".

A reasonable construction of the subject covenant would be that the parties never intended to restrict a mobile home or house trailer from the acreage tract. In the same subdivision on all of the 250 lots, such restriction (against home trailers) was placed in the deeds by Alcoa. Yet it made no such definite restriction in Kohutek's deed. In addition to this, although a building or other improvement might, in certain circumstances, include a mobile home, the subject restriction clearly had application to such a building that would normally require "plans and specifications." No such plans and specifications are available to mobile homes and it would be a constrained construction of this restriction to so interpret it.

The testimony is clear from the evidence that Alcoa did not want a mobile home or house trailer at all, irrespective of any plans or specifications. The restrictions as to residential lots had less square footage requirements than Kohutek's mobile home. The cost of construction requirement on houses in the residential area was less than half as much as the cost of Kohutek's mobile home. The residential lot guideline

restrictions were therefore not material to Alcoa's refusal.

One witness testified that he did not believe that the placing of a trailer house or mobile home on the property would cause any damage to his property or others. Although we are not required to consider Alcoa's expert witness on damages on a no evidence point, he testified in any respect that the property in the subdivision might depreciate 5% but it would take one, two or three years before the depreciation would be effective. It was undisputed that the subject restriction was of short duration as it had less than three years left to be effective. The restriction in question would run out within the time that Alcoa's witness said that damage might occur. The jury did not find any damages or irreparable harm to Alcoa or to any other property owner.

The right to mandatory injunctive relief is not given without a substantial injury. The courts are reluctant to issue mandatory injunctions and will do so only with great caution in order to prevent serious damage. 31. Tex.Jur. § 32, Injunctions, p. 83, et seq. There is an exception to this general rule that permits injunctive relief without regard to damages caused by the breach. Whether such injunction shall issue, depends upon the equities between the parties; whether there has been a breach of a positive or negative legal right; consideration of the time duration of the restrictive covenant; and many others. I do not believe that Alcoa has brought itself within this exception. See 43 C.J.S. Injunctions § 87b(4) (c), p. 585, and following.

The testimony was clear that Kohutek thought he had Rhoades' consent. No other evidence could be as strong as was the evidence of Kohutek's acts: in buying the property; in purchasing the trailer house; in expending funds for the utilities; and finally, in selling his household furnishings from his rented house.

Alcoa knew at least one day before the trailer home was placed upon the property that Kohutek was going to do so. It knew several days before that of Kohutek's intended plans. It permitted him to incur expenses, to enter into obligations, and to sell his household furnishings without lifting a finger to stop him. By its passive acquiescence to Kohutek's move, it would be contrary to good conscience now, to enforce such a doubtful right as this restrictive covenant in a court of equity. Diligence has always been an essential prerequisite to equitable relief of the nature sought by the appellant Alcoa.

I would affirm the judgment of the trial court.