[S. F. No. 17747.   In Bank.   Nov. 15, 1949.]

MARGERY LIVINGSTON HANNULA, Appellant, v. HACIENDA HOMES, INC. (a Corporation), Respondent.

Nathan G. Gray for Appellant.

Breed, Robinson & Stewart and Edgar B. Stewart for Respondent.

SHENK, J.—This is an appeal from a judgment for the defendant in an action for declaratory relief. The plaintiff is the owner of a portion of Lot 47 in the residential subdivision of Orinda Park Terrace in Contra Costa County. At one time the entire lot was owned by plaintiff's parents who built a residence on a portion of the lot and then sold that portion to a person not a party to this action. The remaining portion was retained by plaintiff's parents and later transferred to plaintiff. Upon offering her property for sale, plaintiff learned that defendant Hacienda Homes, Inc., would probably assert its authority to deny permission to build a dwelling house upon her fractional part of Lot 47. Whatever authority defendant has to restrict building on the plaintiff's land must be derived from a restriction contained in the recorded map of Orinda Park Terrace and in the deeds to lots therein which reads:

"7. No dwelling house or other house or structure shall be erected until the plans and specifications with the proposed site therefor have been submitted to and approved by the first party hereto and by Hacienda Homes, Inc., and a written permit issued therefor."

Plaintiff brought this action to obtain a declaration that "plaintiff and her . . . successors in interest have a right to build and erect upon said real property a dwelling house or appurtenance thereto . . ." Subsequent to the filing of the complaint, in order to make its position clear in the pending action, defendant's directors specifically considered plaintiff's land and determined that her portion of Lot 47 does not constitute an adequate and acceptable building site. The answer avers that the use of plaintiff's property as a building site would be detrimental and contrary to the desired and intended residential development of the Orinda area.

At the trial, both parties were prepared to present evidence as to the reasonableness of defendant's action, but in order to narrow the controversy, orally stipulated that the reasonableness of defendant's action was not in issue, and that the only question to be decided by the trial court was whether, in a proper case, defendant has authority under the restriction in question to determine that a site less than a full lot is not suitable for a residence. The evidence on reasonableness was therefore not presented. Nevertheless, the trial court rendered the following judgment:

''c) That said defendant Hacienda Homes, Inc., has not acted arbitrarily or capriciously or in excess of the power and authority conferred upon it under the provisions of said covenants, conditions and restrictions in determining that said real property does not constitute an adequate or proper building site under the provisions of said covenants, conditions and restrictions.''

On appeal, plaintiff claims first, that the judgment wrongly construes the restriction and unduly extends its burdens, and second, that the judgment goes beyond the issue presented to the trial court by determining that defendant has not acted arbitrarily or capriciously.

As to her first claim plaintiff's position appears to be this: For the purpose of this action, the validity and enforceability of the seventh restrictive covenant is not challenged; plaintiff concedes that she or her successor must submit for defendant's approval plans for, and the proposed site of, any residence to be constructed on her land in order that uniform setback and sidelines may be preserved. But her contention is that the restriction does not grant authority to defendant to determine that a portion of a lot is an inadequate building site, irrespective of any plans or specifications which might be submitted. Plaintiff rests her proposed construction of the restriction on the established rule that restrictive covenants are to be strictly construed against limitations upon the free use of property. (*Wing* v. *Forest Lawn Cemetery Assn.*, 15 Cal. 2d 472 [101 P.2d 1099, 130 A.L.R. 120] ; *Werner* v. *Graham*, 181 Cal. 174 [183 P. 945] ; *Martin* v. *Ray*, 76 Cal.App.2d 471 [173 P.2d 573].)

Restrictions on the use of land will not be read into a restrictive covenant by implication, but if the parties have expressed their intention to limit the use, that intention should be carried out, for the primary object in construing restrictive covenants, as in construing all contracts, should be to effectu-

ate the legitimate desires of the covenanting parties. ■ The restriction in question which is stated to be "for the benefit of all owners of property in the tract" declares that plans and specifications and the proposed site of any construction must receive the approval of defendant. Its clear purpose is to assure that proposed structures will accord with the design and development of the subdivision with regard to space, light and air, and will not detract from its appearance. The power to pass on plans for that purpose necessarily includes the authority to determine that a portion of an original lot is not large enough for dwellings of the type found in the tract, for it might be impossible to construct a residence on a portion of a lot which would comport with setback, sidelines and backlines, maintained as to the other residences. Thus the proper construction of the restriction would uphold the authority of the defendant, in a proper case, to decide prior to the submission of plans that any construction on a portion of a lot could not meet neighborhood standards.

The highest courts of Maryland, Massachusetts, and Pennsylvania have held restrictions valid and enforceable which were similar to the one here involved, requiring approval of all construction by an individual or body of persons acting on behalf of other lot owners in a tract. (*Parsons* v. *Duryea* (1927), 261 Mass. 314 [158 N.E. 761]—construction of driveway disapproved by trustees of tract enjoined; *Jones* v. *Northwest Real Estate Co.* (1925), 149 Md. 271 [131 A. 446]—erection of disapproved second-story porch enjoined by real estate company; *Harmon* v. *Burow* (1919), 263 Pa. 188 [106 A. 310]—construction of dwelling house enjoined where grantor of tract lots refused to approve plans.)

On oral argument the plaintiff placed great reliance on a decision of the court of Ohio appeals, *Exchange Realty Co.* v. *Bird,* 16 Ohio Law Abstract 391, decided in 1933. In that case the lots of a subdivision were subject to a number of restrictions including the following: "1. Said real estate shall be used exclusively for private dwelling house purposes; no such house shall be erected, placed or suffered to remain upon said premises the cost of construction of which shall be less than Eight Thousand Dollars ($8,000.00), and no such house or other structure shall be erected, placed or suffered to remain thereon until the plans and specifications therefor, and its location upon said premises and the grade of the first floor level above the sidewalk, have been approved by the Exchange

Realty Company or its duly authorized agent in the premises.''
Relying on this restriction the real estate company refused to
approve asphalt shingles for the defendant lot-owner's roof
and specified that wood or slate shingles were to be used. The
Ohio court held that since there was no specific restriction as
to the kind of roofing material which was to be used, the plain-
tiff could not direct the kind of shingles defendant could put
on his house under the first restriction, declaring, (p. 394) :
'' [i]t will be noted that such a covenant is always used in con-
nection with some general plan or scheme or some other desig-
nated . . . restrictions within which such approval may oper-
ate, or that the covenant regulates the scope of approval; and
the same is true in the instant case, as the restriction reads
'no such house.' The word 'such' presents the question, What
house? and the answer evidently is that said word means the
kind of a house provided for in the other designated restric-
tions. We find no decision or text to the effect that a covenant
requiring the submission to and approval by the grantor,
standing alone, without any other restriction, is enforceable.
. . . If this language were the only restriction in the deed, it
surely would be entirely too vague and indefinite to be enforce-
able . . . as standing alone it would be devoid of any gen-
eral plan or scheme, would be unlimited in its scope, and
would leave the purchaser subject to the mere whim of the
seller . . .''

There are obvious differences between the restriction in the
Exchange Realty case and the one on which the defendant
Hacienda Homes rests its authority. There the restriction
provided that ''no such house'' should be constructed until
plans and specifications had been approved by the realty com-
pany, and it was a possible and perhaps plausible interpreta-
tion that the words ''such house'' referred to the kind of house
which was permitted by the other specific restrictions. That
the restriction there did not confer any authority to restrict
construction in ways other than those provided in the specific
restrictions could further be inferred from the fact that the
restriction requiring approval of ''such'' houses was contained
in a paragraph in which there were specific provisions regard-
ing the kind of houses which could be erected.

The phrase ''such house'' which in the Exchange Realty
case was said to refer to the type of house defined in the other
restrictions, is absent from the restriction in the present case
which is one of eight paragraphs of restrictions and is sepa-
rately numbered. None of the other restrictions except that

limiting construction to dwelling houses or appurtenances thereto, bears upon the type or placement of any structure, for the other restrictive covenants prohibit listed commercial activities, limit the cutting of timber, provide that septic tanks shall not be constructed without the approval of Hacienda Homes, Inc., prohibit the existence of cesspools, declare that no outside fire may be set without permission of Hacienda Homes, Inc., prohibit permitting animals to stray and forbid the discharge of firearms. Consequently there is no framework of specific restrictions within which the right to approve plans, specifications and site could be said to be confined.

Furthermore it is apparent that in deciding the Exchange Realty case, the Ohio court believed the action taken by the realty company to be arbitrary. The court states the sole question before it to be: "Can the plaintiff dictate the kind of shingles the defendant may put on his house?" and answered the question in the negative. It should be emphasized that we are not here dealing with the reasonableness of the action taken by the defendant. Each of the decisions enforcing like restrictions has held that the refusal to approve plans must be a reasonable determination made in good faith. (*Parsons* v. *Duryea, supra,* 261 Mass. 314, 316; *Jones* v. *Real Estate Co., supra,* 149 Md. 271, 278; *Harmon* v. *Burow, supra,* 263 Pa. 188, 190.) Thus the broad language of the Exchange Realty opinion to the effect that standing alone the restrictive covenant requiring approval of plans would leave the purchaser subject to the mere whim of the seller and would therefore be too indefinite to be enforced ignores the decisions cited which hold that the power to approve plans and site must not be exercised capriciously or arbitrarily.

Plaintiff argues that if the defendant has the right to determine that a portion of a lot, regardless of its size, is not suitable for a dwelling, then it could make the same determination with respect to an entire lot or group of lots. This result would not follow. The present action is concerned only with the authority of defendant to decide that a lot is inadequate, assuming its action is not arbitrary. It is clear from what has been said that the defendant's action must be reasonable and taken in good faith. Whether in this case the action taken by defendant with respect to plaintiff's lot was reasonable has been withdrawn as an issue by stipulation.

The trial court might have denied declaratory relief as not being necessary and proper unless the parties were

willing to submit for adjudication not only the question of the defendant's authority under the restrictive covenant to prohibit construction, but also the closely connected question of the reasonableness of its action. (Code Civ. Proc., § 1061.) The purpose of declaratory relief is to liquidate uncertainties and controversies which might result in future litigation. (*Columbia Pictures Corp.* v. *DeToth,* 26 Cal.2d 753, 760 [161 P.2d 217, 162 A.L.R. 747] ; *Maguire* v. *Hibernia Sav. & Loan Society,* 23 Cal.2d 719, 729 [146 P.2d 673, 151 A.L.R. 1062] ; *Jackson* v. *Lacy,* 37 Cal.App.2d 551, 561 [100 P.2d 313].) That purpose is not accomplished where, by stipulation of the parties, an issue between the parties with respect to the same subject-matter is excluded from the judgment, and is almost certain to give rise to further litigation. **[4]** Whether a determination is proper in an action for declaratory relief is a matter within the trial court's discretion, however, and the court's decision to grant or deny relief will not be disturbed on appeal unless it be clearly shown, and such is not here the case, that the discretion was abused. (*California Physicians' Service* v. *Garrison,* 28 Cal.2d 790, 801 [172 P.2d 4, 167 A.L.R. 306] ; *Moss* v. *Moss,* 20 Cal.2d 640 [128 P.2d 526, 141 A.L.R. 1422].)

■ The trial court having entertained evidence solely on the question of defendant's authority to prohibit construction on subdivided lots, it appears there is merit in plaintiff's second claim that the judgment which was correct in its interpretation of the restrictive covenant, went beyond the scope of the settled issue in declaring that the defendant did not act arbitrarily or capriciously in exercising the power conferred upon it by the restriction.

All provisions in the judgment to the effect that defendant did not act arbitrarily or capriciously are stricken, and with this modification the judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.