122 A.2d 910 (1956)
Joseph ALLIEGRO and Esa Alliegro, his wife, Plaintiffs,
v.
HOME OWNERS OF EDGEWOOD HILLS, Incorporated, a corporation of the State of Delaware, Defendant.
Court of Chancery of Delaware, New Castle.
May 23, 1956.
H. Albert Young, Wilmington, for plaintiffs.
Bayard W. Allmond and Thomas W. Knowles, Wilmington, for defendant.
MARVEL, Vice Chancellor.
Plaintiffs are the owners of lots 13 through 19 on White Oak Road in Block J of Edgewood Hills, a residential development in Brandywine Hundred. The section of this development in which plaintiffs' lots are located was conveyed in 1937 to one Samuel Thomison and wife by Brandywine Realty Company subject to certain restrictive covenants governing the use of the land conveyed. Although these restrictions were not set forth in the deed through which plaintiffs took title to their lots in June 1954, plaintiffs' deed states that the conveyance *911 to them was subject to recorded restrictions, and plaintiffs' subsequent actions preparatory to building as well as their complaint leave no doubt but that they were aware of these restrictions at the time they became landowners in Edgewood Hills.
Starting in 1937, Mr. Thomison proceeded to sell lots in the restricted area which he had purchased and under the ninth paragraph of the restrictions (the interpretation of which is the crux of this litigation) the grantor proceeded to exercise its reserved right to pass upon the plans and specifications of the houses proposed to be built by lot purchasers. Some time later the remaining undeveloped lots in the restricted area were sold by Mr. Thomison to Wilmington Construction Company and in 1942 the right of the original grantor to pass on building plans was assigned[1] to the present defendant. Defendant is a nonprofit corporation organized by landowners living in Edgewood Hills, the corporate purpose of which is to protect property rights and values in that community. Through a board of managers of twelve members and a restrictions committee defendant continues to exercise the original grantor's right to pass on the building plans of those purchasing lots in the area restricted in the 1937 grant.
Paragraph nine of the restrictive covenants reads as follows:
"No building, fence, wall or other structure shall be commenced, erected or maintained, nor shall any addition to or change or alteration therein be made, until the plans and specifications, showing the nature, kind, shape, height, materials, floor plans, color scheme, location and approximate cost of such structure and the grading plan of the lot to be built upon shall have been submitted to and approved in writing by the party of the first part and a copy thereof, as finally approved, lodged permanently with the party of the first part. The party of the first part shall have the right to refuse to approve any such plans or specifications or grading plan, which are not suitable or desirable, in its opinion, for aesthetic or other reasons; and in so passing upon such plans, specifications and grading plan, it shall have the right to take into consideration the suitability of the proposed building or other structure and of the materials of which it is to be built, to the site upon which it is proposed to erect the same, the harmony thereof with the surroundings and the effect of the building or other structure, as planned, on the outlook from the adjacent or neighboring property."
Plaintiffs upon becoming landowners arranged for the drafting of plans for a proposed home which in their opinion satisfied existing restrictions and submitted them to defendant for approval. There is no doubt but that these plans and specifications fully met specific covenants pertaining to minimum frontage, side spaces, minimum cost, distance from the street of the proposed dwelling and other specific restrictions governing the use of the purchased land. Defendant, however, in a letter of June 24, 1955, declined to approve plaintiffs' plans and specifications stating that they did not "* * * meet the standard required for a house in the location proposed." This letter was sent after an informal poll of board members had upheld the action of the restrictions committee in disapproving the Alliegro plans. On July 27, 1955, after this suit was instituted, at a meeting of the board at which nine members were present, these plans, which had been slightly modified in the meantime, were unanimously rejected after being characterized by C. E. Daniels, vice president of the defendant, as being "* * * marginal in every respect, below standards of other recently rejected houses."
*912 Plaintiffs seek a declaratory judgment as to their rights as landowners in Edgewood Hills and specifically pray for an order enjoining defendant from interfering with the construction of their proposed home, the plans and specification for which, plaintiffs contend, more than meet applicable specific restrictions. Plaintiffs argue that they have complied with all specific requirements laid down in the restrictions and that accordingly defendant has no choice but to approve the submitted building plans inasmuch as authority to disapprove is meaningless if it is unbridled and not made to depend on findings of failure to meet precise restrictive covenants. Plaintiffs contend that were this not so paragraph 9 could be exercised in a purely arbitrary and capricious manner and would be invalid. Defendant's motion for summary judgment treated as a motion to dismiss was denied on the ground that plaintiffs were entitled to a hearing on the issue as to whether or not defendant had acted fairly and reasonably and this is the opinion of the Court after final hearing.
It is well established that restrictions in deeds will be construed strictly against a person who seeks to place such impediments in the way of the normal purchase and sale of land, Gibson v. Main, 14 Del.Ch. 449, 129 A. 259, Daniels Gardens, Inc., v. Hilyard, 29 Del.Ch. 336, 49 A.2d 721. Because it is commercially desirable that land users be able to deal freely with what they own, restrictions are also not indefinitely enforceable and lose their force when they fail to serve any useful purpose. The evidence in the case at bar discloses that starting in 1937, comfortable and attractive homes of varying costs and sizes were put up in Edgewood Hills, and while there is no indication that any particular type of architecture was adopted as a standard there does seem to have been a reasonable and proper purpose on the part of the original grantor and its successor, the present defendant, to control and nurture the growth of a pleasant residential community. Buyers with knowledge or the means of gaining knowledge of covenants restricting use of the land they propose to purchase cannot effectively object to the enforcement of such covenants when they are reasonable, realistic and are fairly administered. Not only are specific restrictions as to minimum cost, setback, side spaces and the like normally enforceable, but a provision empowering a committee to pass on plans and specifications for the purpose of determining whether or not a proposed building conforms with a general plan of development and with applicable restrictive covenants, when clear and reasonable and for the general benefit of the entire development will be upheld, Hollingsworth v. Szczesiak, 32 Del.Ch. 274, 84 A.2d 816. Furthermore, where the judgment of the person with authority to pass on plans is controlled by fixed standards and made to hinge on whether submitted plans meet enumerated precise requirements, the act of approval or disapproval is largely a nondiscretionary, administrative procedure, Exchange Realty Co. v. Bird, 16 Ohio Law Abst. 391. In the cited case the court indicated that in its opinion a general power to approve or disapprove without more would be too vague and indefinite to be enforceable as it would submit a purchaser to the whims of the grantor. A more complex problem arises, however, where the reserved right of approval or disapproval is set forth as a power in itself to be exercised according to provisions contained in the clause creating the power, Jones v. Northwest Real Estate Co., 149 Md. 271, 131 A. 446. In that case the Court of Appeals of Maryland had before it a restrictive covenant practically identical with paragraph 9 of the covenants here involved. Operating under it the grantor declined to approve building plans submitted by the purchaser, Jones, on the grounds that a planned second story porch would give appellants' proposed house the look of a two-family dwelling which in the opinion of the grantor would be out of harmony with the appearance of other homes in the development. The covenant was considered reasonable and valid except insofar as the power to disapprove of plans for purely aesthetic reasons was questionable and the court pointed out that the covenant had been understood by the purchaser, who had in fact accepted certain changes suggested by the grantor. Evidently the court was of the opinion that the *913 reason given for disapproval of appellant's plans bore a reasonable relation to the appearance of existing homes in the development and its general plan and that the objection if well founded in fact was valid on grounds other than those of pure aesthetics.
Having upheld the general purpose of the covenant and the soundness of the reason given for refusal to approve the Jones' plans, the court next considered whether the refusal had been decided on in a reasonable manner. The court concluded in affirming the trial court that the evidence supported a finding that appellants' proposed home, planned with knowledge of the restriction in question, would not harmonize with other homes in the development and that the act of disapproval of appellants' plans by the grantor was not unreasonable. Recognition of the principle that a restrictive covenant reserving the power to reject building plans when defined and limited by the covenant itself will be upheld when it is not exercised unreasonably or arbitrarily is found in the following cases, Parsons v. Duryea, 261 Mass. 314, 158 N.E. 761; Harmon v. Burow, 263 Pa. 188, 106 A. 310; Hannula v. Hacienda Homes, Inc., 34 Cal. 2d 442, 211 P.2d 302, 19 A.L.R.2d 1268; and Fairfax Community Association v. Boughton, Ohio Com.Pl., 127 N.E.2d 641.
I conclude that the type of covenant here under consideration which, as had been noted, is almost identical with that involved in Jones v. Northwest Real Estate Co., supra [149 Md. 271, 131 A. 449], is valid, apart from the questionable right to refuse to approve plans "`* * * for aesthetic or other reasons * * *'", and that the crucial question to be answered is whether the defendant under the facts acted fairly and reasonably. While defendant's letter of July 27, 1955, failed to state specific reasons for rejection of plaintiffs' plans, it was brought out at trial that both the cubic and floor areas planned for plaintiffs' home failed by a large margin to meet those of existing homes in Edgewood Hills. From 1937 to 1942, approved homes were built in the development with cubic space on the average of some 30,000 cubic feet and with floor areas which averaged about 2,400 square feet. Houses built since the latter date have on the average only slightly less floor area and slightly more cubic space. The smallest house standing in the section involved from the point of view of floor area, namely the Desmond home which was built in 1954, has a floor area of 1,620 square feet and cubic space of 30,900 cubic feet. Plaintiffs' plans disclose that their house is designed to have a finished floor area of 1,220 square feet and an estimated cubic area of 18,100 cubic feet. I have examined a local prototype of plaintiffs' proposed house now standing in a development known as Villa Monterey and have compared it with homes in Edgewood Hills. Because this house is substantially smaller than existing homes in the restricted area of Edgewood Hills here involved, I am of the opinion that defendant has not acted unreasonably in taking the position that plaintiffs' home as now planned would not meet the standard set by existing homes in the restricted area. This ruling does not take into consideration views of officials of the corporate defendant about the "feel" of plaintiffs' proposed home, but is based solely on the conclusion that defendant acted reasonably insofar as it rejected defendant's plans on the basis of insufficient floor and cubic areas. Because of its modest size and the effect of that factor on the outlook from neighboring properties, plaintiffs' proposed home, as now planned, would be out of harmony with the surroundings.
On reasonable notice, judgment will be entered for defendant.
NOTES
[1] The restrictive covenants in question were declared to run with and bind the land restricted and were also assignable to "* * * any one or more corporation or associations that will agree to assume said rights, powers, duties and obligations and carry out and perform the same." Clearly the covenants including the one concerning submission of building plans for approval were not solely for the personal benefit of the original grantor.