[No. D004097. Fourth Dist., Div. One. Dec. 13, 1989.]

RUSSELL J. CLARK, as Trustee, etc., Plaintiff and Appellant, v. RANCHO SANTA FE ASSOCIATION et al., Defendants and Respondents.

[Opinion certified for partial publication.[1]]

---

[1] Pursuant to *California Rules of Court*, *rules 976(b) and 976.1*, this opinion is certified for publication with the exception of part II.

608

**COUNSEL**

James W. Hall for Plaintiff and Appellant.

Jenkins & Perry and Gary L. Wollberg for Defendants and Respondents.

**OPINION**

**HUFFMAN, J.**—Russell J. Clark and his family trust (Clark) appeal a judgment denying his petition for writ of mandate. In his petition, he challenged a decision of the Rancho Santa Fe Association (the Association) turning down his application to subdivide his Rancho Santa Fe property. Pursuant to a stipulation of general reference, the trial was heard by the Honorable Charles W. Froehlich, Jr., who issued a statement of decision finding no abuse of discretion on the part of the Association, and the superior court entered judgment accordingly. Thereafter, Clark sought to bring a motion for new trial before the superior court, which referred it to Referee Froehlich, who denied it as untimely. Clark additionally appeals the order of the superior court delegating the motion for new trial to the referee. Although the latter claim of error is not addressed to an appealable order, we deem each argument raised to be a cognizable challenge to the judgment as a whole. Nevertheless, for reasons explained below, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Clark is a homeowner in Rancho Santa Fe of a 4.42-acre lot having one existing home. Like other properties in that community, his lot is subject to a protective covenant (the covenant) adopted by the Association in 1927 and amended in 1930, 1939, and 1973. The covenant enacts numerous land use regulations and aesthetic standards, stating in its preamble these purposes:

"WHEREAS, Rancho Santa Fe is unusually attractive and valuable as a high class place of residence because of the rare quality of its landscape, trees and shrubs and the fine architecture and other improvements established by its property owners; and

"WHEREAS, these property owners are most desirous of preserving, continuing and maintaining this character of community and rare landscape features and of upholding the quality of all future architecture and improvements; and of restricting the use, height and bulk of buildings . . . ."

Both the preamble and other paragraphs in the covenant (Nos. 4, 149, 180) contain language enabling the Association to interpret and enforce covenant conditions and restrictions.

Clark first made inquiries in 1980 into the possibility of subdividing his lot into two parcels of approximately equal size. However, the lack of adequate sewer facilities at that time forced him to abandon the plan. When a sewer district was formed in 1983, Clark told his engineers to proceed with plans so he could apply for approval of the subdivision. He submitted his application to the Association on October 21, 1983, including tentative maps showing the proposed lot and the slopes on the property. He updated this application to correct several formal deficiencies, such as his use of an outdated application form, shortly thereafter.

The Association's land use planner, Linda Zombeck, evaluated the plans, visited the site, and notified Clark the proposed building site was on an area of slope greater than that permitted by the Association's community plan adopted in 1980 (25 percent). She recommended the proposed lot lines be adjusted to avoid the areas of greatest slope. Clark requested his application be removed from the agenda of the Association's art jury (Art Jury), to whom the application had been delegated pursuant to the provisions of the covenant, for a short delay while he redesigned the parcel map.[3] The

---

[2] Because Clark's claims amount to a contention that no substantial evidence supports the judgment, we set out the facts in detail. (See *Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881-882 [92 Cal.Rptr. 162, 479 P.2d 362].)

[3] Article III of the covenant establishes the Art Jury's duties and functions, which include approval of streets, subdivisions, improvements, and works of art. Paragraph 46, section 1, provides in pertinent part: "No part of the said property and/or of any property at any time within the jurisdiction of the Art Jury or of the Association shall be subdivided, laid out or

redesigned map and plans complied with suggestions made by Zombeck and by the Association's building commissioner, William Stonebreaker, and with Association covenant compliance standards for grading, subdivision, and setbacks,[4] and county standards for zoning acreage. The county approved the parcel map.

Although Association land use planning staff did not make a recommendation one way or the other on Clark's application, the Art Jury recommended denial of the application on February 21, 1984. In response, Clark prepared a proposed restrictive covenant to be filed upon approval of his application which would restrict any future building to areas of less than 25 percent slope and require neutral coloration of any such building. He submitted his proposals to the Association's board of directors (the Board) on March 1, 1984, when it was to act upon the Art Jury's recommendation. The Board returned the matter to the Art Jury after visiting the property. Again the Art Jury recommended denial at its meeting on March 20, 1984. When Clark renewed his application before the Board on April 5, 1984, it was denied. The formal notification of this denial attached the Board's resolution listing five findings on which the denial was based: "1. The Tentative Map does not meet the 'uniform and reasonably high standards of artistic result' as required by Paragraph 46 of the [covenant.]

"2. The lot is not physically suitable for the proposed type of development; and

"3. Due to the highly visible location of the proposed new lot and steepness of the slope, the requested subdivision does not conform to the [covenant] and Community Plan . . . .[5]

"4. The parcel is divided by the proposed access easement creating an isolated section of Parcel B on the downhill portion of the property. This

improved by buildings, or structures, or its physical contours altered or changed . . . except with the approval of the Association with the written advice of the Art Jury so as to insure a uniform and reasonably high standard of artistic result and attractiveness, in exterior and physical appearance of said property and improvements."

[4] At the time Clark's application was under consideration, Association regulations provided for a setback requirement greater than that specified in the covenant itself. In *Ticor Title Ins. Co.* v. *Rancho Santa Fe Assn.* (1986) 177 Cal.App.3d 726 [223 Cal.Rptr. 175], this court held those regulations invalid as exceeding what was allowed by the covenant without compliance with prescribed covenant modification procedures.

[5] Here the resolution cites the portion of the covenant preamble quoted *ante*, at page 611, referring to the attractiveness and valuable quality of the landscape in the area. It also cites portions of the Rancho Santa Fe community plan stating goals of enhancing the present rural life-style, ensuring compatibility of development with the standards of the covenant, maintaining existing topographical features, protecting views, and restricting development on slopes exceeding 25 percent.

section of Parcel B generally conforms to the slope of Parcel A and should most logically be a part of Parcel A.

"5. Due to the prohibition of the Rancho Santa Fe Community Plan against building on slopes in excess of 25%, the available building site is severely restricted. This will limit the size and location of a future residence as well as accessory facilities beyond the point of reasonable expectations of future buyers."

The Board refused Clark's request that it reconsider its denial of his application, informing him a covenant modification would be required for any reconsideration.

Clark filed his petition for writ of ordinary mandamus and complaint for declaratory relief on September 19, 1984, and amended it December 26, 1984. (Code Civ. Proc., § 1085.)[6] He alleged the Association violated its ministerial and discretionary duties to approve his subdivision proposal and that similarly situated applicants and properties were treated differently. The Association demurred to and moved to strike portions of the pleading. (§§ 430.10, 435-436.) Pursuant to stipulation of the parties, a general reference under section 638 was ordered and Charles W. Froehlich, Jr., then a retired judge, was appointed referee.[7] The terms of the stipulation and order, dated February 21, 1985, provided in pertinent part that the action was referred "for a complete and final adjudication," and that the referee's decisions would stand as the decision of the court with judgment to be entered thereon in the same manner as if the action had been tried by the court.

Referee Froehlich issued an order after hearing on the Association's demurrer and motion to strike. Among other rulings, he struck the allegations in the petition and complaint referring to a ministerial duty on the part of the Association. He refused to strike allegations in the petition referring to the Association as a "defacto municipal body." A demurrer to the cause of action for declaratory relief was sustained without leave to amend on the ground it was not clear what specific relief was sought.

The matter proceeded to trial on April 10 and 16, 1985. Clark entered into evidence the covenant, his applications and maps, Association reports, and the Board's resolution of denial of the proposal. He testified that an Association staff report found his plans were in compliance with all

---

[6] All statutory references are to the Code of Civil Procedure unless otherwise specified. When referring to statutory subparts we omit repetition of the word "subdivision."

[7] Judge Froehlich now serves as an associate justice of this court; he took no part in our determination of this matter.

objective standards of the covenant and regulations with regard to zoning, setback, and grading requirements. The Association stipulated that the plans presented by Clark showed a structure could be built that was in compliance with all applicable county building codes and construction standards.

Clark then presented evidence of the subdivision maps and building plans for nine different properties in the area for which subdivisions had been approved, attempting to show an Association pattern of inconsistent treatment of applications. He called two experts, Kenneth Wiant, an architect, and William Hart, a civil engineer, to testify about the characteristics of these properties, some of which were irregularly shaped, heavily sloped, visible from or close to adjoining residences, visible from roadways, or possessed of panhandle driveways running down the side of adjoining lots. Clark showed that of all subdivision applications made within the past 10 years and not withdrawn before consideration by the Board, all were approved except for Clark's and one for an already undersized lot.

Somewhat inadvertently, Clark also showed some lots in Rancho Santa Fe are not house sites. In response to Clark's attorney's comment that that evidence did not help him any, the referee pointed out, "You established that there are lots that cannot be built on."

Clark also called to testify Luis H. Renn, a community activist, who expounded about the history in the Association of differential treatment of applicants depending on the changing memberships of various art juries. At the close of the first day of trial, the parties and referee went out to view Clark's and other properties.

Clark raised a collateral estoppel theory at trial based on an unpublished opinion of this court in a case arising out of the application of covenant restrictions to a different parcel of property, *Fish* v. *Rancho Santa Fe Association* (June 9, 1982) 4 Civil No. 24309 (*Fish*). In that matter, this court affirmed a judgment of the superior court awarding declaratory relief and a mandatory injunction to the Fishes, homeowners in Rancho Santa Fe who alleged the Association's denial of their application to subdivide their property was arbitrary and unreasonable. At the trial on his petition, Clark introduced into evidence the slip opinion in *Fish* and pleadings and other documents from the case, arguing that the denial of the Fishes' application had been made on the same basis as the denial of Clark's application. This basis was alleged to be that although all objective criteria of the covenant had been complied with, the application was rejected on subjective grounds. The Association submitted a supplemental trial brief on the collateral estoppel claim.

When Clark completed his case in chief, the Association moved for judgment under section 631.8[8] on the ground he had not made out a prima facie case that the discretion of the Association could legally have been exercised in only one way. Referee Froehlich questioned Clark's attorney about his theory of the case and clarified that Clark was not claiming as grounds for relief that procedural irregularities had occurred, nor that the Association had acted beyond its powers in reviewing and denying his application, nor that personal discrimination against Clark had taken place. Instead, the referee framed the issues presented by the petition for writ of mandate as whether there was any substantial evidence supporting the Association's and the Art Jury's subjective conclusions about the adequacy of the subdivision proposal. He granted the motion for judgment in favor of the Association and requested Clark to prepare a draft statement of decision. After a conference with the parties, a final version was signed and filed with the superior court.

The central finding of fact in the statement of decision dealt with the factual basis on which the Art Jury and Board decided to deny Clark's subdivision proposal. The referee stated: "Several aspects of the proposed subdivision presented a substantial factual basis from which the Art Jury and board of directors of the Association could and, in fact, did reasonably decide to deny the proposed subdivision. The factors considered by the Association were (i) the configuration of the resulting lots, (ii) the proposal for an easement to provide access to the proposed lot which would cut off a portion of the remaining parcel, which portion is reasonably related to the proposed lot in its topography and yet was to be part of the remaining parcel solely to create enough square footage in the remaining parcel to satisfy the applicable acreage requirements in the area, (iii) the proximity of the available building space on the proposed lot to the existing residence on the remaining parcel and (iv) the fact that a proposed new residence on the proposed lot would be readily visible from residences on adjoining parcels and when viewed from the road to the north."

The referee then acknowledged Clark's application had complied with all objective criteria[9] set forth in the covenant, community plan, and subdivision guidelines, but stated: "The referee makes no finding on the extent to which any proposed structure would conform to the artistic, qualitative or

---

[8] Section 631.8(a) provided in pertinent part as of the time of trial: "After a party has completed his presentation of evidence in a trial by the court, the other party . . . may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence. The court may consider all evidence received. . . ."

[9] Although the statement of decision at paragraph 1(i) literally states Clark's application complied with "all nonobjective criteria set forth in the covenant" and related regulations, in context the word "nonobjective" should be read as "nonsubjective" or "objective." The parties have argued it as such, and we assume this discrepancy is merely a typographical error.

environmental standards of the Covenant, deeming the issue at trial to be the Association's review of the characteristics of the proposed subdivided lot itself, rather than any specific structure proposed to be build [*sic*] thereon."

The referee then ruled as a matter of law the Association had the power under the covenant to approve or disapprove applications on subjective criteria related to artistic, qualitative, or environmental merits even if all objective covenant and regulatory standards had been met. The referee further acknowledged the Association had not consistently applied the covenant standards to subdivision applications and development permits over the years, but concluded the current Art Jury and Board were not estopped from enforcing the covenant standards by decisions of previous Art Juries and Boards regarding different properties.

With respect to Clark's claim of collateral estoppel based on the *Fish* decision, the referee decided that ruling did not resolve any issues in Clark's case, and explained: "As noted above, the Covenant gives the Association the authority to deny an application for subdivision of land on the basis of subjective criteria of an artistic, qualitative or environmental nature. Assuming for argument that the trial court judgment in *Fish* is contrary to this conclusion, it is in error. The decision of the Court of Appeal in the *Fish* decision, 4 Civil 24309, did not reach this issue and is therefore not determinative."

Finally, the referee found there was substantial evidence in support of the decision of the Association, and that Clark had not shown the Association's discretion could legally have been exercised only in Clark's favor or had been abused through arbitrary, capricious, or unreasonable action.

Following entry of judgment on the statement of decision, Clark filed his notice of intention to move for new trial. He claimed the referee had used the wrong standard of decision at trial. In response to an argument by the Association the notice was untimely filed, Clark filed points and authorities arguing his notice should be timely filed nunc pro tunc on the basis the clerk's office had closed early the day Clark's attorney's messenger had first tried to file the notice.

The superior court set the motion for new trial before Referee Froehlich. Clark brought an ex parte application to withdraw the motion from the referee and set it before a superior court judge, on the basis the referee's jurisdiction had expired. On January 6, 1986, Judge Don Martinson heard and denied the application, sending the motion, the nunc pro tunc application, and an application to correct clerical error in the statement of decision

to Referee Froehlich. Judge Martinson reasoned that to do otherwise would render the procedure a nullity because of Referee Froehlich's familiarity with the issues, and elaborated, "Because then it would be a simple matter for the losing party, so to speak, to say just a minute, I want this reviewed by, quote, a real judge." Clark's attorney responded that it would be an idle act to bring the motion for new trial before Referee Froehlich and he would not do so. Ultimately, Referee Froehlich issued an order dated January 21, 1986, stating he had taken the matter under submission since no party appeared for oral argument, had considered the papers on file and the proceedings before him, and denied a new trial on the basis the notice of intention to move for new trial was not timely filed.

On January 13, 1986, eight days before the order denying new trial was signed, Clark filed his notice appealing the judgment and Judge Martinson's "minute order" denying his application to have his motion for new trial and related relief determined by a superior court judge.[10]

## DISCUSSION

Clark attacks the judgment denying his petition for mandamus on several fronts. He first asks this court to engage in de novo review of the provisions of the covenant, claiming application and interpretation of these contractual provisions are questions of law. Such review, he claims, will establish that the Board acted arbitrarily and capriciously in denying his subdivision proposal in light of his compliance with all requirements of the Association regarding zoning, setback, and grading, and with all county building codes and construction standards.

In the same vein, Clark argues the application of the doctrine of collateral estoppel based on *Fish, supra,* 4 Civil No. 24309, establishes that the Association abused its discretion in processing his application and that the

---

[10]This notice of appeal, filed 55 days after service of notice of entry of judgment, was timely as to the judgment although premature as to the order denying new trial, which in any case is not separately appealable. (Cal. Rules of Court, rule 2(a); *Scales* v. *Federal Escrow Service* (1961) 189 Cal.App.2d 84 [10 Cal.Rptr. 660]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 92, pp. 113-114.) (All subsequent references to rules are to the California Rules of Court unless otherwise specified.) Rule 3(a), extending the time for appeal upon the filing of a valid notice of intention to move for a new trial, thus did not come into play.

With respect to the purported appeal from the order sending the motion for new trial and related matters to the referee, no minute order of the January 6, 1986, proceedings appears in the record, but the court's oral ruling is embodied in the reporter's transcript. Although section 904.1(b) defines an appealable order as including an order made after a judgment made appealable by section 904.1(a) (e.g., final judgments, such as the one before us), we conclude this oral order by Judge Martinson is not separately appealable but is reviewable as subsumed in the final judgment, as will be explained in part IV, *post.*

judgment is thus erroneous. He further contends the 1986 decision of this court, *Ticor Title Ins. Co.* v. *Rancho Santa Fe Association, supra,* 177 Cal.App.3d 726 invalidates this 1985 judgment since invalid setback regulations were still in effect when Clark's application was made. Finally, he claims the referee lacked jurisdiction to hear and determine his motion for new trial since the powers conferred on him by the provisions of the stipulation and order for general reference had been exhausted by that time.

We address each of these contentions separately.

I

Standard of Review

■ In support of his claim of entitlement to a de novo determination of whether Referee Froehlich's analysis of the covenant requirements was correct, Clark cites well-established principles of contract law, as restated in *Moss Dev. Co.* v. *Geary* (1974) 41 Cal.App.3d 1, 8-9 [115 Cal.Rptr. 736]: "The construing of a written contract is essentially a judicial function to be exercised according to generally accepted canons of interpretation so that the purpose of the instrument may be given effect. As the Supreme Court stated in *Parsons* v. *Bristol Development Co.* [1965] 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]: 'It is . . . solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, "An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence . . . where there is no conflict in the evidence . . . or a determination has been made upon incompetent evidence . . . ." ' "

■ Our threshhold inquiry, therefore, is whether the language of the covenant permits the Association and its art jury to utilize subjective as well as objective criteria in carrying out their functions in making judgments upon applications by property owners to subdivide or otherwise improve their lots. Read as a whole, the covenant clearly contemplates that they may. Paragraph 46 (see fn. 3, *ante*) specifically requires the Association, on the advice of the Art Jury, to consider the suitability of proposed subdivisions in light of the stated goal of "a uniform and reasonably high standard of artistic result and attractiveness, in exterior and physical appearance of said property and improvements." Similarly, the preamble to the covenant refers to the purpose of the document as protecting the attractiveness and value of the area as "a high class place of residence." Paragraph 4 grants to

the Association and the Art Jury the right and power to interpret and enforce the restrictions and conditions placed on the subject property.

Necessarily, any such evaluations of a property owner's proposal for compatibility with these desired environmental qualities must be done on a subjective basis, as "attractiveness" and "artistry" are, like beauty, well within the eye of the beholder.[11] Such qualities have never been measurable or quantifiable. Therefore, we conclude as a matter of law the Association and its subordinate entities maintain the power under their enabling covenant to apply both subjective and objective criteria when evaluating the merit of proposed improvements to covenant property.

Having determined this initial question of contract law, we next state the proper standard of review of the judgment denying the petition for writ of mandate. The pleadings defined the issues to require the referee to decide whether mandamus should issue to correct an abuse of discretion by the Association.[12] (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 344 [124 Cal.Rptr. 513, 540 P.2d 609]; *A.B.C. Federation of Teachers* v. *A.B.C. Unified Sch. Dist.* (1977) 75 Cal.App.3d 332, 340-341 [142 Cal.Rptr. 111].) ■ However, mandamus will not lie to control the exercise of discretion in matters lawfully entrusted to an administrative agency. (*State of California* v. *Superior Court* (1974) 12 Cal.3d 237, 247 [115 Cal.Rptr. 497, 524 P.2d 1281].) ■ ■ ■ ■ ■ We review this judgment in accordance with the substantial evidence test: "As our Supreme Court said in *Taormino* v. *Denny* [1970] 1 Cal.3d 679, 687 [83 Cal.Rptr. 359, 463 P.2d 711]: 'The trial court is the arbiter of the facts, and this court cannot upset its decision as a matter of law when substantial evidence supports the judgment.' On appeal, we are bound to 'view the evidence in the light most favorable to the respondent and will indulge in all intendments and reasonable inferences to sustain the findings and the judgment.' [Citation.] The judgment of a superior court denying a writ of mandate is reviewable in this court on appeal. [Citations.] The scope of review is, therefore, governed by the above stated principles." (*Kennedy* v. *South Coast Regional Com.* (1977) 68 Cal.App.3d 660, 666 [137 Cal.Rptr. 396]; accord, *Realty Projects, Inc.* v. *Smith* (1973) 32 Cal.App.3d 204, 213, fn. 13 [108 Cal.Rptr. 71].)[13]

---

[11] "Beauty is in the eye of the beholder." (Bartlett, Familiar Quotations (Little, Brown and Co., 15th ed. 1980) p. 676.)

"Beauty in things exists in the mind which contemplates them." (Bartlett, *supra,* at p. 357.)

[12] As noted above, a demurrer was sustained without leave to amend to Clark's allegations seeking declaratory relief on the provisions of the covenant. The only issues before the referee were those raised by the petition for writ of mandate.

[13] Because this judgment was entered after the granting of a motion for judgment made under section 631.8, additional rules of substantial evidence review apply. The court in *Slater* v. *Alpha Beta Acme Markets, Inc.* (1975) 44 Cal.App.3d 274, 278 [118 Cal.Rptr. 561, 72

■ At trial, Clark had the burden of stating a prima facie case entitling him to relief. (*Sipper* v. *Urban* (1943) 22 Cal.2d 138, 141 [137 P.2d 425].) To prevail, he had to convince the trier of fact the wide latitude ordinarily accorded administrative and quasi-public administrative bodies in their decisionmaking had been exceeded.[14] ■ The Supreme Court in *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4] made the definitive statement of the extent of this judicial tolerance: "It is the general rule that the writ of mandamus may not be employed to compel a public administrative agency possessing discretionary power to act in a particular manner. The court in response to appropriate application may compel such agency to act, but it may not substitute its discretion for the discretion properly vested in the administrative agency. [Citations.] In a proceeding of this character, challenging the propriety of decision of an administrative board, the attitude of the courts is well stated in the following language . . . [citation]: 'Courts should let administrative boards and officers work out their problems with as little judicial interference as possible. . . . Such boards are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.'"

■ Where the subject agency or association is in the business of land use planning, the rules are equally well established: "It is a settled rule of law that homeowners' associations must exercise their authority to approve or disapprove an individual homeowner's construction or improvement plans in conformity with the declaration of covenants and restrictions, and in good faith. (*Hannula* v. *Hacienda Homes* (1949) 34 Cal.2d 442, 447 [211 P.2d 302, 19 A.L.R.2d 1268]; *Branwell* [*sic*] v. *Kuhle* (1960) 183 Cal.App.2d 767, 779 [83 Cal.Rptr. 767].) As the court in *Hannula* stated: 'Each of the decisions enforcing like restrictions has held that the refusal to approve plans must be a reasonable determination made in good faith.' [Citation.]" (*Cohen* v. *Kite Hill Community Assn.* (1983) 142 Cal.App.3d 642, 650 [191 Cal.Rptr. 209].)

These general principles will guide our inquiry into whether substantial evidence supports the judgment that the Association did not abuse its discretion. However, before reaching that issue, we first address Clark's claims

---

A.L.R.3d 1264], set out these rules: "In determining a motion under section 631.8, the trial court is commanded by that statute to 'weigh the evidence . . . .' If the motion is granted, its findings are entitled to the same respect on appeal as any other findings and are not reversible if supported by substantial evidence. [Citation.] Where two or more inferences reasonably can be drawn from the facts, an appellate court is without power to substitute its deductions for those of the trial court. [Citations.]" (Accord, *Rodde* v. *Continental Ins. Companies* (1979) 89 Cal.App.3d 420, 423-424 [152 Cal.Rptr. 500].)

[14] As noted above, the referee in ruling on the Association's demurrer and motion to strike refused to strike the portion of the petition referring to the Association as a "defacto municipal body."

of legal errors in the judgment: the collateral estoppel issues raised by his reliance on the *Fish* decision (*supra,* 4 Civ. No. 24309) and the alleged invalidity of the judgment in light of our *Ticor Title* decision (*supra,* 177 Cal.App.3d 729).

## II

### Claims of Legal Error*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## III

### Substantial Evidence Analysis

■ Returning to our determination of whether substantial evidence in this record supports the judgment, we reiterate that under section 631.8, the referee was empowered to weigh the evidence and decide if Clark had made out his prima facie case that an abuse of discretion had occurred of the magnitude warranting judicial intervention. ■ That evidence included the referee's view of the scene and comparable properties. The information obtained by this view was independent evidence that could be taken into consideration in determining the issues presented by the pleading; "[a]s independent evidence the judge's observations were of equal dignity to the other evidence in the case; . . ." (*South Santa Clara etc. Dist.* v. *Johnson* (1964) 231 Cal.App.2d 388, 400 [41 Cal.Rptr. 846].)

■ In his statement of decision, the referee summarized several aspects of Clark's proposal which he determined supplied a substantial factual basis for the Association's denial of the application. (See *ante,* p. 615.) These included the configuration of the two proposed lots, the design of the access easement, the proximity of the two building sites, and the ready visibility of the proposed new home from adjoining homes and the road. All these items were drawn from the Board's resolution of denial of Clark's application, which took place after a series of hearings, the procedural correctness of which Clark did not challenge. As we explained above in part I, discussing standards of review, the Association's assessment of each of the enumerated aspects of the design falls within the scope of the discretion conferred on it and its art jury by the covenant as a whole and specifically paragraph 46, stating an intention "to insure a uniform and reasonably high standard of

---

*See footnote 1, *ante,* page 606.

artistic result and attractiveness, in exterior and physical appearance of said property and improvements."

In this record, a number of objective factors can be identified to support the Association's exercise of discretion in carrying out its duties to subjectively, yet reasonably, evaluate applications of this nature. Accordingly, viewing the evidence in the light most favorable to the respondent, and indulging in all reasonable inferences to sustain the findings and the judgment (*Kennedy* v. *South Coast Regional Com., supra,* 68 Cal.App.3d at p. 666), we conclude the judgment is supported by substantial evidence.

## IV

### Referee's Power to Hear the Motion for New Trial

Clark contends Referee Froehlich lacked jurisdiction to hear and determine the merits of the motion for new trial. He relies on *Daverkosen* v. *Kelley* (1872) 43 Cal. 477, where the Supreme Court found that after a trial judge granted a motion for new trial, setting aside a referee's reported judgment, the court was without power to return the matter to the referee when the stipulation for reference provided only that the referee should " 'take the evidence and report a judgment.' " (*Id.* at p. 478.) The court concluded the powers conferred on the referee had been exhausted upon the report of a judgment. Clark contends the referee's powers here did not extend beyond the initial rendering of the statement of decision which was confirmed by entry of judgment.

We cannot address the merits of Clark's position without first discussing the issue of whether the order appealed, Judge Martinson's delegation of the motion for new trial to the referee, is properly reviewable by this court. That order does not meet any of the criteria for an appealable order after an appealable judgment under section 904.1(b),[17] as explained by Witkin in his treatise: (1) The order must affect the judgment in some manner with respect to its enforcement or stay of execution; (2) if the appeal from the order after judgment would present the same questions as an appeal from the judgment itself, it is not appealable; (3) the "judgment" from which the order follows must be a final judgment in the sense of finality in the trial court. (9 Witkin, *op. cit. supra,* § 101, at pp. 120-121.) Specifically, with reference to the latter criterion, Judge Martinson's order was made in the context of an attack on judgment in the trial court in the

---

[17] Section 904.1 provides in pertinent part: "An appeal may be taken from a superior court in the following cases:

" . . . . . . . . . . . . . . . . . . . .

"(b) From an order made after a judgment made appealable by subdivision (a)."

form of a new trial motion which had not yet been determined. Therefore, the underlying judgment was not yet final and cannot support an independently appealable order after judgment within the meaning of section 904.1(b).

Our inquiry, however, does not stop there. It is clear that an order denying or dismissing a motion for new trial is reviewable only a part of the appeal taken from the final judgment. (*Hughes* v. *De Mund* (1924) 195 Cal. 242, 247 [233 P. 94]; 9 Witkin, *op. cit. supra*, § 92, at p. 113.) In our view, the same principle applies to a preliminary order setting the motion for hearing, and we thus review this order, both as to its content and to the extent it may be construed as an order denying the motion for new trial, as subsumed in the final judgment.[18]

■■■ Our discussion begins with the terms of the stipulation and order of general reference. The parties agreed the action would be referred "for a complete and final adjudication." The order provided the referee's decisions would stand as the decision of the court, with judgment to be entered upon his statement of decision in the same manner as if the action had been tried by the court.

This stipulation and order must be read in light of pertinent statutory provisions. Section 638, subdivision 1, is the general provision authorizing general references, such as is before us: "A reference may be ordered upon the agreement of the parties filed with the clerk, or judge, . . . [¶] (1) To try any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision thereon . . . ."

Section 644 further provides the referee's findings shall stand as the findings of the court, with judgment to be entered thereon. Section 645 pertains to exception and review of a referee's decision: "The decision of the referee or commissioner may be excepted to and reviewed in like manner as if made by the court. When the reference is to report the facts, the decision reported has the effect of a special verdict."

Further applicable authority is found in the special proceedings part of the Code of Civil Procedure where procedures for new trial are specified: "Section 1092. MOTION FOR NEW TRIAL, WHERE MADE. The motion for new trial must be made in the Court in which the issue of fact is tried."

---

[18] Even though Clark and his attorney declined to appear before the referee to argue the motion for new trial, the referee correctly proceeded to determine the motion on the notice and papers alone. (§ 659; 8 Witkin, *op. cit. supra*, Attack on Judgment in Trial Court, § 69, at p. 466, and cases cited.) Clark did not waive the merits of the motion by failing to appear and argue the matter.

Section 1110 specifies that the provisions of the Code of Civil Procedure relative to new trials and appeals in civil actions likewise apply to mandamus and other special proceedings. One of those provisions, section 656, is particularly instructive: "A new trial is a re-examination of an issue of fact in the same court after a trial and decision by a jury, court, or referee."

■ Section 661 generally provides that a motion for new trial shall be heard and determined by the same judge who presided at trial, if available. The rationale for this rule stems from the broad nature of the powers conferred on a judge in ruling upon a motion for new trial, as explained in *Mercer* v. *Perez* (1968) 68 Cal.2d 104, 112 [65 Cal.Rptr. 315, 436 P.2d 315]: "Such a motion is addressed to the judge's sound discretion; he is vested with the authority, for example, to disbelieve witnesses, reweigh the evidence, and draw reasonable inferences therefrom contrary to those of the trier of fact; on appeal, all presumptions are in favor of the order as against the verdict, and the reviewing court will not disturb the ruling unless a manifest and unmistakable abuse of discretion is made to appear. [Citations.]"

In *Ellsworth* v. *Ellsworth* (1954) 42 Cal.2d 719, 722-723 [269 P.2d 3], the Supreme Court held that in the case of a general reference, under section 644, the referee's decision must be attacked in the same manner as one made by the court, as by a motion for new trial. Earlier Supreme Court cases also prescribed the same remedy for any error committed by the referee, and appeared to assume the court which ordered the reference would be the one deciding any such motion. (*Lewis* v. *Grunberg* (1928) 205 Cal. 158, 162 [270 P. 181]; *Baker* v. *Baker* (1858) 10 Cal. 527; *Branger* v. *Chevalier* (1858) 9 Cal. 353, 362; *Grayson* v. *Guild et al.* (1854) 4 Cal. 122, 125; *Sloan* v. *Smith* (1853) 3 Cal. 406, 407; see also *In re Riccardi* (1926) 80 Cal.App. 66, 72 [251 P. 650]; and 6 Witkin, *op. cit. supra*, Proceedings Without Trial, § 51, p. 365.) This approach by the court was based on the language of section 638, subdivision 1, providing that in the usual case, a referee's duty is to try the issue "and to report a statement of decision thereon." *Daverkosen* v. *Kelley, supra,* 43 Cal. 477, also focused upon this type of definition of the scope of a referee's duty in finding that a repeated reference after the grant of a new trial exceeded the powers conferred on the referee by the parties' stipulation for reference.

In *Estate of Bassi* (1965) 234 Cal.App.2d 529, 540 [44 Cal.Rptr. 541], a case arising out of a reference whose terms were somewhat equivocal as to whether general or special powers were conferred, the Court of Appeal discussed new trial issues in the context of a reference: "[I]n any event the court had power to review the matter on motion for new trial even if it were a general reference. (*Calderwood* v. *Pyser* [(1866)] 31 Cal. 333, 338; *Cappe* v.

*Brizzolara* (1862) 19 Cal. 607, 608.)" The court in *Bassi* drew this conclusion from language in *Calderwood* v. *Pyser* (1866) 31 Cal. 333, stating it is within a referring court's power to set aside a referee's erroneous conclusions of law and to direct a proper judgment to be entered upon the facts as found, and from language in *Cappe* v. *Brizzolara* (1862) 19 Cal. 607, stating the court's discretion to grant a new trial for insufficiency of the evidence to justify the decision "was not affected by the fact that the case was tried before a referee." (*Id.* at p. 608.)

We do not read any of these cases as forbidding an interpretation of the stipulation before us which would delegate Clark's motion for new trial to the referee. In our view, such an interpretation is the only rational one to be made in this procedural and factual context. Reading all the above rules together with the broad language of the stipulation, we conclude the referee had the power and was the appropriate decision maker to determine the merits of the motion for new trial. He was most familiar with the facts and as well qualified as a sitting superior court judge to draw legal conclusions from those facts, such as the timeliness of the notice of intention to move for new trial, the grounds stated for new trial, and the proper standard of decision upon the petition.[19] His assignment under the stipulation included reaching a "complete and final adjudication" of the matter, which in our view included the determination of any posttrial motions.[20] Nevertheless, under *Calderwood* v. *Pyser, supra,* 31 Cal. 333, 338, had the referee reached any patently erroneous conclusions of law, the superior court would have retained the authority to set them aside and to direct a proper judgment to be entered upon the facts found.

We further note that under section 656, a new trial is defined as a proceeding held to reexamine the facts in the *same court* which held the original trial, which expressly includes the court of a referee. If the referee holds the power to conduct a new trial, he or she accordingly has the power to entertain and decide a motion for new trial, if the terms of the stipulation or order for general reference are not to the contrary. *Daverkosen* v. *Kelley, supra,* 43 Cal. 477, is thus distinguishable in this respect.

---

[19] We take this opportunity to observe we are mindful of the increasing use of references under section 638 in these days of crowded trial court calendars. We are also aware of the increasing pool of highly qualified referees to whom such matters may be delegated. Such factors point toward a liberal interpretation of reference stipulations where posttrial proceedings are concerned.

[20] In his discussion of finality of judgment in his treatise, Witkin explains: "Another sense in which the term final is used is in reference to the point at which the 'final' or last judgment becomes safe from attack or review. Thus, it may be said that a final judgment is appealable, but also that it is not final so long as an appeal or motion for new trial is pending. [Citations.]" (7 Witkin, *op. cit. supra,* Judgment, § 2, at p. 453.) Thus, this stipulation appears to contemplate a final resolution of the case to the point of exhaustion of all opportunities to attack the judgment in the trial court.

Similarly, in the writ context, where it was the referee who tried the issues of fact (§ 1092), the new trial should be held before the same official, and the decision whether to grant a new trial must logically belong to that same personage absent any indication in the order of reference that his or her powers have expired. There was no such provision in the stipulation which we examine, nor would one ordinarily be necessary or desirable. The statutory framework described above indicates the decision maker most familiar with the action should be the one with the duty and responsibility to decide a motion for new trial—in this case, the referee. The order issued on the motion was within the scope of his discretion to evaluate the grounds for relief from late filing offered by Clark, and accordingly correctly determined a lack of jurisdiction to grant relief on the merits of the motion. (See *Mercer* v. *Perez, supra,* 68 Cal.2d at p. 112.) There was no error in this regard.

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Wiener, J., concurred.